# BOARD OF MEDICAL EXAMINERS OF OKLAHOMA et al. v. GULLEY.

No. 2907. Opinion Filed October 14, 1913.

Rehearing Denied December 9, 1913.

(136 Pac. 1083.)

1. **MANDAMUS—Petition—Sufficiency.** A petition in mandamus to be sufficient, when challenged by demurrer, must contain allegations of fact which, taken as true, affirmatively show that the person sought to be mandamused is under the clear legal duty of doing the thing it is sought to compel him to do.

2. **SAME—Physicians and Surgeons.** Petition examined, and held insufficient.

3. **PHYSICIANS AND SURGEONS—Right to License Without Examination.** Under section 39, art. 5, of the Constitution (Williams' Ann. Ed.), a physician who had been practicing medicine in Oklahoma Territory under a territorial license is not entitled, as a matter of right, to registration since statehood without examination, where it is shown that on September 12, 1907, the territorial Supreme Court had affirmed the decision of the district court, in a suit brought by the territory, canceling and annulling the territorial license under which such physician had been practicing on the grounds of fraud and deceit in procuring the same, and no other license had been issued him.

(Syllabus by Brewer, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Mandamus by Calvin D. Gulley against the Board of Medical Examiners of the State of Oklahoma and others. A demurrer to the petition was overruled, and defendants bring error. Reversed.

*Chas. West,* Atty. Gen., for plaintiffs in error.

*John A. Remy,* for defendant in error.

Opinion by BREWER, C. This is a suit in mandamus to compel the state medical board to issue a license to the plaintiff below, Calvin D. Gulley, to practice the profession of medicine.

The summary of what the petition states for cause of action, as set out by the Attorney General, and which defendant in error admits is substantially correct, follows:

"This action was begun by the defendant in error on April 28, 1910, by filing his petition in the district court of Oklahoma county, in which he alleged: That he was then and had been for a period of more than nineteen years a practicing physician, and a resident of the territory of Oklahoma and the state of Oklahoma for more than nine years. That by act of the first state Legislature a State Board of Medical Examiners was created. That for more than six years prior to the enactment of said law and the organization of said board he was a practicing physician in the territory of Oklahoma. That on the 7th day of November, 1896, he was graduated and received a diploma from the Independent Medical College of Chicago, Ill., and also graduated from the Metropolitan Medical College of Chicago, Ill., on October 12, 1899. That no charges were made against him except in a proceeding which resulted in a decision by the Supreme Court of the territory of Oklahoma on September 12, 1907, affirming a decision of the district court of Logan county, revoking the license theretofore issued to him to practice medicine in the territory of Oklahoma by the territorial board of health of said territory of Oklahoma. That since statehood the Oklahoma State Board of Medical Examiners have licensed other physicians from the same schools of medicine from which the plaintiff (defendant in error) was graduated, which physicians held the same credentials as those held by him (Gulley). That he made application to said board for a license, which was refused. That at the same legislative session at which the act creating said State Board of Medical Examiners was passed there was also passed a resolution directing said State Board of Medical Examiners to correct any injustice that may have been done any applicant of any school of medicine, and to restore to practice any one who, by mistake or otherwise, had been deprived of the right to practice his or her profession, without further cost or examination, and that all physicians who had been granted license to practice medicine previous to statehood, regardless of school or schools, should be placed upon an equal footing with the graduates of the same school, who had been granted a license by the State Board of Health, or the Board of Medical Examiners, which resolution was approved by the Governor. That subsequent to the passage of such resolution he again applied to the State Board of Medical Examiners for a license to practice medicine, but that de-

fendants again refused and still refuse to grant said license. The petition concluded with a prayer for mandate directing the officers and members of said board to execute, issue, and deliver to the plaintiff (defendant in error) a license permitting him to engage in the practice of medicine, and for costs and other proper relief."

A demurrer to the petition was interposed, setting up the following grounds:

"First. That this court has no jurisdiction of the person of the defendants. Second. That this court has no jurisdiction of the subject of the action. Third. That the plaintiff has no legal capacity to sue. Fourth. That the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against these defendants, or any one of them."

This demurrer was overruled, and the defendants below, electing to stand on the same, have appealed to this court on the question of the sufficiency of the petition in mandamus.

We can still further boil down the averments of the petition, when measuring its charging portions, to see if the plaintiff is entitled, as a matter of legal right, to have the court compel the board to issue him a license. To obtain such relief, it must appear affirmatively that, under the facts pleaded and the law, it was the legal duty of the board to license him. His averments amount to this: (1) That for more than six years prior to the passage of the Act of 1907-08 creating the medical board he was a practicing physician in Oklahoma Territory. (2) That he is a graduate of Independent Medical College of Chicago and the Metropolitan Medical College of Chicago. (3) That the only charges theretofore made against him resulted in the cancellation of his license by the territorial Supreme Court September 12, 1907. (4) That the board has licensed other practitioners who graduated from the same schools from which he graduated. (5) That he made application for a license, and was refused. (6) That he has some right (not very clearly defined) under a concurrent resolution of the Legislature of 1907-08. This allegation charges that an injustice has been done him (presumably by the court's decision referred to).

For the plaintiff to succeed, it must appear from the facts stated in the petition that he is entitled to registration and a license

to practice medicine; the question of examination as to proficiency is not in this case. We are merely asked to declare, taking the facts stated as true, that the board was under the unqualified and imperative legal duty of issuing him a license.

First. Section 39, art. 5 (section 101, Williams' Const.), after providing for the creation of a board of health, says:

"All physicians, * * * now legally registered and practicing in Oklahoma and Indian Territory shall be eligible to registration in the state of Oklahoma without examination or cost."

If Doctor Gulley was a legally registered physician at the time of the creation of the state, then he is entitled to registration without examination. Was he? By specific mention in his petition he brings into his case a decision of the territorial Supreme Court rendered September 12, 1907. *Gulley v. Territory of Oklahoma,* 19 Okla. 187, 91 Pac. 1037. In this case it is made to appear that on February 11, 1902, Dr. Gulley had been licensed to practice medicine under the law in force in the territory of Oklahoma at that time, and later the territory, through its Attorney General, brought suit in the Logan county district court, upon direction of the Governor, to have the license canceled and annulled on the ground that it had been obtained through fraud and deception. The court sustained the contention of the territory, and an appeal was prosecuted to the Supreme Court, where the cause was affirmed, which resulted in the annulment and cancellation of his license to practice medicine in Oklahoma Territory. Inasmuch as the petition here makes no claim that after that judgment, and prior to statehood, he was again licensed, it is manifest that he can found no right to the relief sought under that provision of the Constitution, for the very simple reason that when statehood came he was not a legally registered and practicing physician.

The claim that plaintiff is entitled to registration because he is a graduate of, and held a diploma from, the Independent and the Metropolitan Medical Colleges of Chicago brings again into this case the decision of *Gulley v. Territory of Oklahoma, supra.* The basis and foundation of that suit was on the claim that these colleges were not legitimate medical schools, but were mere "di-

ploma mills," that issued diplomas without a course of study, examination, etc., but merely for a financial consideration. On this point in the former case, the court, in the body of the opinion, says:

"It is also contended that the evidence is insufficient to sustain the finding and judgment of the court below. In our opinion the evidence fully sustains the allegations of fraud and deception in the procurement of the license, and we think that no other reasonable or just conclusion could have been reached by the trial court. The record discloses a flagrant case of fraud, deception, and misrepresentation in the procurement of the license. And this is not all. The applicant knew, at the time he made his application and verified the same, under oath, that he was not a graduate of a reputable medical college, within the meaning of this statute. He knew that the pretended diploma which he held from the college was a mere sham and fraud, well calculated to mislead and deceive the territorial board of health. He knew that the obtaining of the diploma was a mere pretense and fraud, and he knew that the Supreme Court of the state of Illinois had, long prior to his application for license to practice in this territory, forfeited the charter of this pretended medical college, and declared 'that the corporation is a mere diploma mill, designed wholly for issuing diplomas to practice medicine, for a consideration, to persons wholly unqualified for such practice.' "

See *Independent Med. College v. People ex rel.,* 182 Ill. 274. 55 N. E. 345.

Under the law in force in 1902, under which the license was originally issued to plaintiff, he was entitled to be registered if he "was a graduate of a medical college," and without examination. He was so licensed or registered on presenting the diploma, and, as has been seen, this license was canceled, because the institution he claimed to be a graduate of was not a "medical college." He sets up his graduation and diploma from this same institution as a basis for demanding, without further inquiry by examination, a license under the law in force when this suit was filed, which provides:

Section 4248, Comp. Laws 1909:

"Every person before practicing medicine and surgery or any of the departments of medicine and surgery in this state, must have the credentials herein provided for. In order to procure such credentials, he must produce satisfactory evidence of

good moral character and a diploma issued by some legally chartered medical school or college; the requirements of such medical school or college shall have been at the time of granting such diploma in no particular less than those prescribed by the American Association of Medical Colleges, or the Southern Association of Medical Colleges in that year in which the diploma was granted. Or he must show satisfactory evidence of having possessed such diploma or license from some legally constituted institution which grants medical and surgical licenses only on actual examinations, or satisfactory evidence of having possessed such license or diploma. He must accompany said diploma or license with an affidavit showing that he is the person therein named and that the diploma or license was procured in the regular course without fraud or misrepresentation of any kind, such affidavit to be taken before any person authorized to administer oaths. The same shall be attested under the hand and seal of such officer, if he have a seal. In addition to such affidavit, the board shall hear such information as in its discretion it may deem proper as to any of the matters embraced in said affidavits. If it should appear from the evidence that said affidavit is untrue in any particular, or if it should appear that the applicant is not of good moral character, the application must be rejected. *   *   *"

The graduation and diplomas set up in this suit as a basis for demanding a license under the above law having been held fraudulent, and not coming from a medical college, in the former suit of plaintiff—this being the issue involved—that question was in that case finally settled. Those diplomas entitled him to nothing. Besides, even if there had been no former suit, the petition nowhere claims that the colleges mentioned meet the requirements or measure up to the standards required in the statute in force when this suit was brought and quoted above.

On the allegation that the board has licensed other practitioners who graduated from the same medical colleges he did, it is sufficient to say that such persons, for all we know and all the record shows, may have shown by examination that they possessed the necessary qualifications, and they may have held diplomas from some other college meeting the requirements of the law.

It is not entirely clear just what right plaintiff predicates on the concurrent resolution of the House and Senate referred to in the petition. It follows:

"Whereas, it is claimed that by mistake or otherwise, injustice has been done physicians of certain school or schools of medicine, in the administration of the territorial laws governing the admission of such physicians to practice their profession, as well as in the attempt to cancel the license of those previously admitted to practice: Therefore be it resolved by the House of Representatives, the Senate concurring therein, that the State Board of Health or Medical Examiners be, and is hereby empowered, authorized and directed to correct any such mistake or mistakes and right any injustices that may have been done any applicant of any school of medicine for admission to practice, and restore to practice any one who, by mistake or otherwise, has been deprived of the right to practice his or her profession, without further cost or examination; that all physicians who have been granted licenses previous to statehood, regardless of school or schools, shall be placed on equal footing with the graduates of the same school, who have been granted license by the State Board of Health or Medical Examiners. This resolution is to be in full force and effect from and after its passage and approval. Approved April 2, 1908." (Laws 1907-08, p. 784.)

It is not necessary to discuss or determine what legal effect the above resolution has, for whether it has the force of law, or be merely advisory as expressing the legislative sentiment, it is not believed that it contains anything that can be said to confer on the plaintiff the legal right to registration. It might at first glance be argued that it affords a basis of support to the charge that other graduates of his college had been admitted, and therefore that he had, because of such fact, acquired the right of admission. But this result does not follow. The view we take of the resolution is that, where "school of medicine" is mentioned, it refers, not to a particular college or university in which medicine is taught, but to one of the great theories of medicine, such as allopathy, homeopathy, eclectic, etc.

It is not shown that an injustice has been done him in the Supreme Court decision mentioned so as to found a claim thereon that he comes under the resolution. And certainly, if such were the claim, the facts showing the injustice would have to appear, and then the board would have to determine whether or not the contention was true, if, indeed, the decision of the terri-

torial Supreme Court could be set aside in such a way, which point it is unnecessary to discuss or decide. While the board is administrative and executive, and does not exercise judicial functions (*Jamieson v. State Board*, 35 Okla. 685, 130 Pac. 923), yet it has a discretion that it may exercise in the performance of many of its duties.

For the reasons given, the case should be reversed.

By the Court: It is so ordered.