Mr. JUSTICE DICKEY: I also concur in the views of Mr. JUSTICE SCOTT.

## ST. CLAIR COUNTY TURNPIKE COMPANY

*v.*

## THE PEOPLE *ex rel.* John B. Bowman.

1. PRIVATE CORPORATIONS—*construction of grants—when corporate rights cease.* Grants to private corporations are to be construed liberally in favor of the public, and strictly against the corporation; whatever is not unequivocally granted, is taken to have been withheld.

2. Where a charter was granted to a turnpike company for twenty-five years, with a proviso that the State might, at the end of that period, become the owner of the turnpike by paying the cost of its construction, and that in case the State failed to pay for the same at that time, the company should still own the turnpike, and exercise the franchises granted until the same was so taken and paid for by the State, it was *held*, that this simply authorized the corporation to hold and operate the road constructed by it, after the expiration of the twenty-five years, until such time as the State chose to become the owner by paying the cost of its construction, and did not authorize it, after that time, to use and enjoy other corporate privileges and rights granted to it by amendment to its charter, not connected with and necessary to the use and beneficial enjoyment of the road constructed by it, and not expressly extended by such amendment beyond the time fixed in the original charter.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a proceeding by information, in the nature of a *quo warranto*, for the purpose of determining the right of appellant to maintain a toll-gate on Dyke avenue, in the city of East St. Louis.

Appellant pleaded, in justification of its claim of right, its original charter and the several amendments thereto, an acceptance of the same, and, in general terms, that it had complied with the conditions and obligations thereby imposed upon it.

Appellee filed a defective replication to the plea, to which appellant demurred. On appellee's motion, the demurrer was carried back to appellant's plea, and the court held the plea defective, and gave judgment upon the demurrer, in favor of appellee, from which judgment an appeal was prayed and perfected by the appellant.

The opinion sufficiently presents the substance of the plea, for the comprehension of the questions discussed.

Mr. JOHN B. HAY, and Mr. M. MILLARD, for the appellant.

Mr. CHARLES P. KNISPEL, and Messrs. BOWMAN & HALBERT, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

In the view we take of this case, it will only be necessary to inquire whether the amendment to appellant's charter, of February 16, 1861, authorized it to maintain a toll-gate across the Bloody Island dyke, until the State should elect to purchase its road, as provided for by the 13th section of its original charter, or did the right terminate with the period provided by that instrument for the termination of the corporate life of appellant?

The original charter became a law on the 13th of February, 1847, and it provides, in the first section, that the corporation shall continue twenty-five years from and after the passage of the act, and the period is not extended by any of the subsequent amendments.

The second section of the amendatory act of February 16, 1861, is as follows:

"The St. Clair County Turnpike Company is hereby authorized to extend their road across Cahokia creek, using the bridge over said creek which connects the St. Clair County Turnpike Company with the dyke on Bloody Island, and over said dyke to its western shore, opposite the city of St. Louis; and shall keep the road on said dyke and bridge in good repair, and build a new bridge, if the present one should float away or become unsafe for traveling; but shall not be held responsible for any destruction of the dyke by high floods. And the said company is hereby authorized to erect a toll-gate on said dyke, or on or near said bridge, and collect the following rates of tolls:     *     *     *     *     *"

If the first section of the original charter were alone to be considered in connection with this section, there could, of course, be no serious question as to the duration of the grant, since no more is pretended by the section than a grant of the franchise to keep a toll-gate to an existing corporation, and when the corporation ceased, the grant would necessarily revert. But the 15th section of the original charter is as follows:

"The State reserves the right to purchase said road at the expiration of said charter, by paying to said corporation the original cost of said road, laid out and expended in constructing the same, to be ascertained by examination of the books of said corporation, by commissioners to be appointed by the legislature; and in case of non-payment or redemption by the State, at the expiration of the charter, the said road, with all its appendages, shall remain in the possession of said corporation, to be used, controlled and possessed under the rights and restrictions in this charter contained, and may demand and receive tolls, as herein stated, until such time as the State shall refund said sums of money, the original cost of construction, and which right the State hereby reserves."

And the 17th section is as follows:

" The corporation hereby created shall be safe and secured for and during the term of the charter, and until the road shall be redeemed by the State, as provided, in all the rights, interests and privileges granted and intended to be conferred to said company by the strict letter and meaning thereof; the corporation complying strictly, clearly and fully on their part."

It is contended by the counsel for appellant that the effect of these sections is to vest a right in appellant to the continued enjoyment, not only of the property in the road and the franchises connected therewith, but also of all additional franchises granted to it, to be used and enjoyed in connection with those pertaining to the road, until the State shall elect to purchase the road.   We are unable to yield our assent to the correctness of this position.

The familiar rule of construction applicable to grants to private corporations is, that they are to be construed liberally in favor of the public, and strictly against the corporation. Whatever is not unequivocally granted in such acts, is taken to have been withheld.   Sedgwick on Stat. and Const. Law, 338–9.

It is absolutely granted, here, that the corporation shall exist for twenty-five years.   It is contemplated that, at the end of that period, it shall cease to exist, and the State become the owner of its road, by paying what its construction cost; but in the event the State shall not elect to do so, it is granted that the corporation shall continue to own its road and appendages, and exercise the franchises with reference thereto, which it before enjoyed, until the State shall pay what the construction of the road cost.   This neither expressly nor by necessary implication recognizes the continued enjoyment, after the expiration of the twenty-five years, of any franchise granted to the corporation, not connected with and necessary to the use and beneficial enjoyment of the road constructed by it.

The continuance of the corporation, in short, after the expiration of the twenty-five years, is simply, as against the State,

for the purpose of holding and operating the road constructed by it, for tolls, until it suits the State to take it at the stipulated price.

The bridge and dyke never became the *property* of the corporation, their *use* merely being granted to it, so that it can not be said that they form a part of the road constructed by the corporation, which the State, in electing to take its road, would have to pay for. The franchise of charging tolls for their use, is entirely distinct and separate from the franchise of charging tolls for the use of the road constructed by the corporation. It adds, it is true, to its revenues, and keeping the bridge or dyke in repair adds to its burdens, but this merely proves that it is an additional source of profit and loss, and the same could be said of a franchise to operate a railroad or a public mill, or any other like enterprise.

The fair construction, then, as we think, is, it was designed the corporation should have the use of the bridge and dyke, with the right to charge tolls thereon, until the period fixed for the termination of the corporation's existence, and the taking of control of its road by the State, and no longer.

The State, by its charter granted to the city of East St. Louis, in 1869, conferred power upon that municipality over this dyke, in common with all other public highways within the city limits, which is absolutely incompatible with its further exclusive control and use by a private corporation.

It follows that, in our opinion, the plea was bad, and the judgment of the court below on the demurrer is right.

The judgment is affirmed.

*Judgment affirmed.*