CALVIN D. GULLEY v. TERRITORY OF OKLAHOMA.

(Filed September 5, 1907.)

(91 Pac. 1037.)

1. PHYSICIANS AND SURGEONS—License—Revocation—Jurisdiction. The district courts have exclusive jurisdiction to hear and determine the question whether a license to practice medicine was fraudulently obtained.

2. SAME—Action—Territory as Party. The territory is not only a necessary party, but it is the proper party to institute such an action.

3. SAME—Grounds for Revocation—Fraud. A license to practice medicine procured through the presentation of a pretended diploma from a fraudulent medical college, without an examination, will be revoked and canceled in a proper proceeding in the district court.

4. SAME—Jury—Right to Trial by. An action to cancel a license upon the gound that it was fraudulently obtained is an equitable proceeding, and the licensee is not entitled to a jury trial as a matter of right.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

Affirmed.

*Calvin D. Gulley,* plaintiff in error, *in pro. per.*

*Cotteral & Hornor,* for plaintiff in error.

*W. O. Cromwell, Attorney General, Don C. Smith, Assistant, and P. C. Simons, Associate Counsel,* for defendant in error.

### STATEMENT OF THE CASE.

This was an action brought in the district court of Logan county by the territory of Oklahoma against Calvin D. Gulley, plaintiff in error, and defendant in the court below, to cancel a license to practice medicine issued on February 11, 1902, by the then superintendent of public health to the plaintiff in error, upon the ground that the license was procured by fraud and deception. The material averments in the petition are as follows:

That on the 8th day of February, 1902, the defendant, Calvin D. Gulley, being desirous of obtaining a license from the superintendent of public health, for the purpose of enabling him, under the provisions of law in force at that time, to engage in the practice of medicine and for the purpose of obtaining a license from the superintendent of public health, executed a certain application in writing, which was duly verified and which, among other things, stated as follows:

"I, Calvin D. Gulley, now of Guthrie, county of Logan, Oklahoma Territory, being first duly sworn, state on my oath that I graduated from the Independent and Metropolitan Medical College located in the city of Chicago, state of Illinois, in 1896, and that I am the identical Calvin D. Gulley to whom a diploma of graduation was issued by the aforesaid colleges of medicine on the fourth day of November, 1896, which diploma I now have in my possession."

That thereupon said application was duly presented to the superintendent of public health, and that the said superintendent of public health, acting upon and relying upon the statements and representations contained therein, issued and delivered to the applicant on the 11th day of February, 1902, a license to practice medicine and surgery in said territory, and registered the said applicant, as required by the laws then in force in said territory. That under the laws of the territory of Oklahoma in force and effect at the time of making and presenting said application and affidavit by the defendant, it was provided that no person should be permitted to practice medicine, in any of its departments, in this territory, unless he were a graduate of a medical college, or

unless, upon examination before a board composed of the superintendent of public health and two other physicians to be selected by the territorial board of health, such person should be found proficient in the practice of medicine. And it was further provided that: "Any person possessing the qualifications mentioned in this section shall, upon presentation of his diploma, or proof thereof by affidavit, if the same is lost or destroyed, and upon the affidavit of two reputable citizens from the county where he resides that such applicant possesses the qualifications of a physician, as prescribed herein, to the superintendent of public health, together with a fee of two dollars, receive from such superintendent ent of public health, a license, certifying the applicant to be a practicing physician, and having the qualifications for such," etc.

The petition further alleges that there was no medical school in the city of Chicago, state of Illinois, on or about the 4th day of November, 1896, known as the "Independent and Metropolitan Medical College." That there was a pretended institution located in said city at that time known as and pretending to operate under the name of the "Independent Medical College," but that said institution was not, in fact, a medical college, and was not engaged in the business of conducting an institution of learning where personal attendance of students is required and where the study of medicine and surgery is taught by a faculty of instructors composed of qualified physicians and surgeons or teachers learned in the art of medicine and surgery. But, on the contrary, said institution was merely a "diploma mill," doing business under the cloak of its corporate name, and engaged in advertising and selling diplomas and conferring degrees as a means of profit, and as an assistance to individuals to enable them to engage in the practice of medicine, regardless of the question of their competency. That the said pretended medical college had no prescribed fixed time during which applicants for degrees or diplomas should pursue the study of medicine, or that required the students to take any fixed or certain course of study, or for any length of time, and that said institution was wholly con-

ducted for pecuniary profit, and that it conferred degrees and issued diplomas for parties without regard to the qualification or fitness of the applicant to practice medicine. That diplomas and degrees could be purchased from said pretended medical college by any person who was willing to pay the price asked by the officials of said concern, and that learning and knowledge in the science of medicine and surgery was not made a prerequisite to the issuing of diplomas and conferring of degrees by the said pretended institution. That the said pretended medical college known as the "Independent Medical College of Chicago, Illinois," was organized and chartered on or about the twentieth day of October, 1896, and that the pretended diploma issued to the said defendant was dated, according to his statement, on November 4, 1896, being about two weeks after the incorporation of the said pretended medical college. That the defendant never attended said pretended medical college, and did not take any course of study at such institution, that none was required of him, and that he did not personally attend such college, and that said pretended college did not have any regular sessions, and that the statements made and contained in the application and affidavit of the defendant, to the effect that the Independent Medical College and the Independent and Metropolitan Medical Colleges were located in the city of Chicago, and were medical colleges, were false and untrue, and that the statement contained in said application and affidavit that he had attended the regular sessions of said college were false and untrue. That the said defendant made said statements knowing them to be false and untrue, and for the express purpose of deceiving the superintendent of the territorial board of health, and with the fraudulent intent and purpose of causing the territorial superintendent of health to rely upon and believe said statements, and in reliance thereupon, and believing the same, to issue to the said defendant a license to practice medicine and surgery in the territory of Oklahoma. That said statements were material and were the basis and foundation of the official action of the superintendent of the territorial board of

health in issuing said license, and that the said superintendent of the territorial board of health did rely upon said statements and representations so made in said application and affidavit aforesaid, and in reliance thereupon, and believing the same, by reason of the representations of the defendant, did, pursuant thereto, issue him a license and permit, as provided by the laws of the territory of Oklahoma, to practice medicine and surgery therein. That upon the issuance of said license, the defendant proceeded to locate in said territory and to engage in the practice of medicine and surgery, and is now engaged in the practice of medicine and surgery, and holds himself out to the public as a physician and surgeon, and advertises himself as a medical doctor, and solicits business as a physician in the treatment of the sick and infirm, and represents that he is qualified and authorized to pursue said profession and business. That by reason of the premises above stated the said defendant practiced a fraud and deceit upon the superintendent of the territorial board of health, and upon the territory of Oklahoma, knowingly, intentionally, and purposely, for the purpose of procuring a license to enable him to practice medicine and surgery in Oklahoma, when in truth and in fact he was not entitled to such license, and could not have procured the same except for the false and fraudulent statements made by him in his application and affidavit. Wherefore the plaintiff prays that the license issued to the defendant on February 11, 1902, be revoked, canceled, annulled, and held for naught, etc.

To this petition the defendant interposed a demurrer, on the ground that the court had no jurisdiction of the subject-matter of the action, that several causes of action were improperly joined, and that the petition failed to state facts sufficient to constitute a cause of action. This demurrer was overruled and exception noted. Thereupon the defendant filed an answer, which admits that on the 8th day of February, 1902, he filed his application as required by the statutes of Oklahoma, and that a license was issued to him upon said application and affidavit, and without the taking of an examination; that he denies all other material alle-

gations contained in said petition, and specifically denies that there was any fraud, deception, or misrepresentation in the procuring of said license.

The plaintiff replied to all the new matters set up in the answer, and upon the issues joined the cause was tried to the court, without a jury, and the court found the issues in favor of the plaintiff and against the defendant, and entered judgment revoking, cancelling, and annulling the license issued to the defendant on the 11th day of February, 1902, to which finding, ruling, and judgment of the court the defendant duly excepted, and brings the case here for review.

Opinion of the court by

HAINER, J.: It is contended by the plaintiff in error that the territory of Oklahoma is not the proper party to institute this action, and that the court had no jurisdiction of the subject-matter of the action. There is no merit to these contentions. The latter part of section 14 of chapter 8 of the Statutes of Oklahoma of 1893 (section 352) in force at that time, contains the following provision:

"The district court shall, upon the complaint of any member of the territorial board of health or the county board of health where he resides have power to cancel any license that may be issued to any person to practice medicine where such license was fraudulently obtained, or where the person to whom such license was issued has been guilty of violating any provisions of this act."

It will thus be seen that the statute clearly confers upon the district court the power to cancel a license issued to any person to practice medicine, where such license was fraudulently obtained. Hence the court clearly had jurisdiction of the subject-matter of the action.

But it is contended that the action should be instituted by the territorial board of health, or some member thereof. We do not think the statute is susceptible of such a construction. It provides that upon complaint of a member of the territorial board of health, the action may be instituted in the district court for the

cancellation of the license. This does not mean that the action shall be instituted in the name of the territorial board of health, or any member thereof. The record discloses that the action was instituted upon the complaint of the territorial board of health, and upon the direction of the governor of the territory, and we think that this fully satisfies the requirements of the statute. Manifestly, the territory of Oklahoma is not only a necessary party, but it is the proper party to institute such an action.

It is also contended that the evidence is insufficient to sustain the finding and judgment of the court below. In our opinion the evidence fully sustains the allegations of fraud and deception in the procurement of the license, and we think that no other reasonable or just conclusion could have been reached by the trial court. The record discloses a flagrant case of fraud, deception, and misrepresentation in the procurement of the license. And this is not all. The applicant knew, at the time he made his application and verified the same, under oath, that he was not a graduate of a reputable medical college, within the meaning of this statute. He knew that the pretended diploma which he held from the college was a mere sham and fraud, well calculated to mislead and deceive the territorial board of health. He knew that the obtaining of the diploma was a mere pretence and fraud, and he knew that the supreme court of the state of Illinois had, long prior to his application for license to practice in this territory, forfeited the charter of this pretended medical college, and declared "that the corporation is a mere diploma mill, designed wholly for issuing diplomas to practice medicine, for a consideration, to persons wholly unqualified for such practice."

In the case of *Independent Medical College v. People ex rel. Aikin, Attorney General*, 182 Ill. 274, 55 N. E. 345, the right of this medical college to transact business in the state of Illinois was directly involved. And this is the college from whence the plaintiff in error represented that he was a graduate. The action was "a proceeding by information in the nature of a *quo warranto*, brought in the circuit court of Cook county, February

term, 1898, by the people, on the relation of the attorney general, against the Independent Medical College, a corporation, of Chicago, to forfeit its franchise or charter. The corporation was chartered in 1896, having as its object the establishment of 'an institution of learning,' and 'for the purpose of promoting mental and physical culture,' and for teaching branches taught in medical colleges generally, with power to grant diplomas and confer degrees. The information charged that the corporation was conducted for pecuniary profit; that it conferred degrees and issued diplomas for a price, without regard to the qualifications or fitness of the applicant to practice medicine. that in some cases no examination whatever was required, and degrees were conferred upon persons wholly unfit and incompetent; that in one case, specifically alleged, a diploma or license to practice medicine and surgery was granted for the price of $25, the applicant never having been a student of medicine or surgery. It was further charged that the corporation was a diploma mill, designed wholly for issuing diplomas to practice medicine, for a consideration, to persons wholly unqualified for such practice. The respondent filed a plea to the information, denying its general allegations, and averring that it had not resorted to wrongful or unlawful methods in conferring degrees as a means of profit to its incorporators, and that it has not issued diplomas to persons wholly incompetent to practice medicine. To this plea the attorney general filed a replication, averring that the defendant 'has usurped and misused, and does now usurp and misuse, its liberties, privileges, and franchises,' and tendering issue. Issue being joined, the cause was heard by the court, without a jury, upon the pleadings and evidence taken. The court found the defendant guilty as charged, and rendered judgment that the Independent Medical College be ousted and excluded from the exercise of all its corporate privileges and franchises under its articles of incorporation." From the judgment an appeal was prosecuted to the supreme court of the state of Illinois, and in affirming the judgment, the court said:

"Without an extended analysis or weighing of the testimony

introduced upon the trial as it appears in this record, we have no hesitancy in saying that it fully justified the finding and judgment of the court below. In fact, it is sufficient to establish the guilt of the defendant, as charged in the information, beyond a reasonable doubt, and would have justfiied, not only the forfeiture of the charter, but the infliction of a fine upon the parties guilty of the abuses."

In *Illinois Health University v. People*, 166 Ill. 171, 46 N. E. 740, the supreme court of Illinois, in discussing this question, said:

"It is not consistent with the public policy of a state which enacts stringent laws for the preservation of the public health, and for the protection of its people from quacks and ignorant pretenders to a knowledge of the science of medicine and surgery, to authorize or permit a pretended health university to turn any one whether known or unknown, qualified or unqualified, into a doctor of medicine, armed with a diploma and degree as one qualified to heal the sick, who may answer its prescribed list of questions and pay its prescribed fee. The charter of a corporation is the full measure of its power, and, if any doubt arises out of the language employed in such charter, such doubt must be resolved in favor of the state. *Mills v. St. Clair Co.*, 2 Gilman (Ill.) 197; *St. Louis J. & C. R. Co. v. Trustees, etc., of the Institution for the Blind*, 43 Ill. 303; *Northwestern Fertilizing Co. v. Village of Hyde Park*, 70 Ill. 634; *St. Clair Co. Turnpike Co. v. People*, 82 Ill. 174; *Minturn v. Larue*, 23 How. (U. S.) 435. It stands admitted by the demurrer that there was a willful misuser and abuse of the power conferred on this corporation, and a prostitution and perversion of its corporate powers to objects and purposes for which no certificate of incorporation could be properly issued, and which would be against the policy of our laws. It was a clear abuse of the liberal privileges conferred by our incorporation laws for appellant to make use of them for the purposes set forth in the information. And for such abuse and misuser its charter may and should be revoked. *Edgar Collegiate Institute v. People*, 142 Ill. 363, 32 N. E. 494."

In *Dent v. West Virginia*, 129 U. S. 122, the supreme court of the United States, in passing upon the right and power of a state to exact from parties, before they can practice medicine, a degree of skill and learning in that profession upon which the

community employing their services may confidently rely, and, to ascertain whether they have such qualifications, to require them to obtain a certificate or license from a board or other authority competent to judge in that respect, said:

"Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all those subtle and mysterious influences upon which health and life depend, and requires not only a knowledge of the properties of vegetable and mineral substances, but of the human body in all its complicated parts, and their relation to each other, as well as their influence upon the mind. The physician must be able to detect readily the presence of disease, and prescribe appropriate remedies for its removal. Every one may have occasion to consult him, but comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce the state to exclude from practice those who have not such a license, or who are found upon examination not to be fully qualified."

It is argued by plaintiff in error that the court erred in admitting in evidence the records of the Illinois courts showing the actions brought by the state of Illinois to revoke and cancel the charters of the Illinois Health Institute, and the Independent Medical College, its successor, and the record of the conviction of Armstrong, the head of these institutions, for the fraudulent use of the mails in operating the same. Clearly, this evidence was competent and material, for the purpose of showing that these pretended colleges were fraudulent institutions, and that the pretended diploma was procured from a fraudulent institution.

But one question remains: Did the court err in refusing the defendant a jury trial? This question must be answered in the negative. This is not one of the actions in which the party is entitled to a jury trial as a matter of right. Trial by jury is guaranteed only in those classes of cases where that right existed at common law. The case at bar falls under the well-recognized

rules of equity jurisprudence to cancel a license on the ground of fraud, and hence the defendant was not entitled to a jury trial as a matter of right. *McCardell v. McNay,* 17 Kan. 433; *Kimball v. Connor,* 3 Kan. 414.

. After a careful examination and consideration of the entire record, and of each of the errors assigned and which have been argued, we are clearly of the opinion that no error was committed by the trial court which would justify a reversal of this cause. It follows that the territory was a proper party to institute this action, upon the complaint of the territorial board of health, and by direction of the governor; that the court had jurisdiction of the subject-matter of the action; and that the evidence fully establishes the allegations of the petition that the license was procured by fraud and deception.

Believing the judgment of the trial court to be right and just, and in consonance with reason and sound morals, the judgment is affirmed.

Burford, C. J., who presided in the court below, not sitting; all the other Justices concurring.