[No. 12467. Department One. February 11, 1915.]

CALVIN PHILLIPS & COMPANY, *Appellant*, v. H. O. FISHBACK,
*as Insurance Commissioner, Respondent.*[1]

INSURANCE—REBATES—CONTRACT — CONSTRUCTION. An agreement
in an application for a loan made to a loan company (also a li-
censed insurance agent) providing that "I hereby agree . . . in
consideration of the services rendered . . . to compensate them,
if said loan is secured, by granting them the exclusive right as in-
surance agents to write, or have written, all the fire insurance car-
ried on the buildings," is not an agreement for unlawful insurance
rebates, in violation of 3 Rem. & Bal. Code, § 6059-33, prohibiting
licensed agents from "offering, promising, allowing, giving, or pay-
ing, directly or indirectly, any rebate of the premium payable on
the policy . . . or any other valuable consideration or induce-
ment to or for insurance . . . which is not specified in the pol-
icy contract of insurance" (MOUNT, J., dissenting).

INJUNCTION—WHEN LIES — ADEQUATE REMEDY AT LAW — INSUR-
ANCE—CANCELLATION OF LICENSE. Where the insurance commissioner
is about to unlawfully cancel the license of an insurance agent, pri-
vate rights are threatened for which there is no adequate remedy
other than injunction.

INSURANCE—REGULATION—REBATES—STATUTES — CONSTRUCTION. 3
Rem. & Bal. Code, § 6059-33, an act intended to maintain an absolute
standard of insurance rates, with the severe penalty of cancellation
of an agent's license for violation thereof, will not be extended by
judicial construction beyond its evident purpose.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered July 24, 1914, in favor of
the defendant upon the pleadings, dismissing an action to
restrain the insurance commissioner from canceling insurance
licenses. Reversed.

*Robert F. Booth, John P. Hartman,* and *Arthur E. Nafe,*
for appellant

*The Attorney General* and *Edward W. Allen, Assistant,*
for respondent.

[1]Reported in 146 Pac. 181.

HOLCOMB, J.—This cause comes here upon an appeal by plaintiff from a judgment by the superior court of Thurston county, upon motion by defendant, respondent here, for judgment upon the pleadings, which motion was granted by the court below and the cause dismissed with prejudice, but later, upon application of the respondent, an order was granted allowing the restraining order to remain in force during the pendency of the appeal.

Appellant, holding licenses to write insurance as an agent in the state of Washington for two insurance companies, instituted the action in the superior court of Thurston county against the respondent as insurance commissioner, alleging, among other things, that the insurance commissioner was about to cancel its licenses; and thereupon obtained a temporary restraining order to prevent such action. The restraining order was kept in full force and effect up to the date of the entry of the judgment of dismissal referred to.

Thereafter, by permission of the court, appellant filed its amended complaint, alleging, among other things, that it was a corporation of the state engaged in real estate, loan, and insurance business, at Seattle and Tacoma, had licenses issued by the insurance commissioner, and that the commissioner had threatened to cancel said licenses for alleged rebate. Among other things pleaded in the amended complaint, and which is admitted by the motion for judgment on the pleadings, is that the appellant in conducting its business would find applicants for loans, would take written applications, a copy of the form of which is attached to the amended complaint, which would give the character of the security, the amount of the loan, the terms and rate; and at the same time, if it could procure it, obtain an agreement by which the borrower would agree that the appellant should write the insurance during the term of the loan, and the insurance was always written at the regular board rates without any reduction or rebate; and that usually the borrower agreed to have the appellant write the insurance, but sometimes would

not, and the loan might or might not be accepted; that the carrying of insurance became a valuable part of the security behind the loan, and that, if the appellant did not have the privilege of writing the insurance, its security was lessened and it would not be so well protected, and in all instances it did not cost the borrower any more or less, as he paid no extra premium and received no inducement for placing the insurance; and that it is a universal practice, carried on by loan agents of the state, to obtain the insurance in the manner aforesaid and for the single purpose of augmenting the security.

Respondent filed his amended answer to the amended complaint, admitting, denying, and setting up an affirmative defense alleging that the appellant rebated, and that the contract for insurance made a rebate arrangement; and at the same time, served and filed a motion for judgment upon the pleadings, dismissing the action, and for such other and further relief as to the court seemed proper. The motion was based upon the records and files in the case. Appellant served and filed its reply, denying that its manner of conducting business as pleaded in the answer constituted rebating or any violation of the insurance code, and denied that it charged borrowers less commissions because of writing the insurance, etc.

The form of agreement which each applicant for a loan is requested and solicited to sign, before his application will be acted upon, contains the following language:

"Agreement by. . . . . . . . . . . . . . as to expenses and compensation to Calvin Phillips & Co., in connection with proposed loan of $. . . . . . . .

                    "Seattle, Wash., . . . . . . . . . ., 19. . . .

"Whereas, I have this day applied to and through Calvin Phillips & Co., for a loan of $. . . . . . . . . to be secured by a first mortgage on property in King county, described as follows, to wit:

"I hereby agree, for myself, my heirs, executors, successors, or assigns, in consideration of the services rendered and

to be rendered by the said Calvin Phillips & Co., to compensate them, if said loan is secured, by granting them the exclusive right as insurance agents to write, or have written, all the fire insurance carried on the buildings on the above described property during the life of said mortgage, and as additional compensation to pay a cash commission of . . . . . per cent. of the amount of said loan, equal to $ . . . . . . . . . . . ."

The insurance commissioner, acting under advice of the *Attorney General*, construed such transactions, as evidenced by the foregoing form of agreement, as rebating, under the terms and provisions of Laws of 1911, ch. 49, p. 195, § 33 (3 Rem. & Bal. Code, § 6059-33), which is as follows:

"No insurance company, by itself or any other party, and no licensed insurance agent, solicitor, or broker, personally or by any other party, shall offer, promise, allow, give, set off, or pay, directly or indirectly, any rebate of, or part of, the premium payable on the policy, or on any policy, or agent's commission thereon, or earnings, profit, dividends, or other benefit founded, arising, accruing or to accrue thereon, or therefrom, or any other valuable consideration or inducement to or for insurance, or any risk in this state now or hereafter to be written, which is not specified in the policy contract of insurance; nor shall any such company, agent, solicitor, or broker, personally or otherwise offer, promise, give, sell, or purchase any stocks, bonds, securities, or property, or any dividends or profits accruing or to accrue thereon, or other thing of value whatsoever as inducement to insurance or in connection therewith which is not specified in the policy. . . . ."

The *Attorney General* lays great stress upon the words in the said statute, "shall offer, promise, allow, give, set off, or pay, directly or indirectly, any rebate of, or part of, the premium payable on the policy, or on any policy or agent's commission thereon, or earnings, profit, dividends, or other benefit founded, arising, accruing or to accrue thereon, or therefrom, *or any other valuable consideration or inducement to or for insurance,* . . . which is not specified in the policy contract of insurance;" and also lays great stress upon the language of the form of agreement used by the appel-

lant in its transactions, "in consideration of the services rendered . . . to compensate them, if said loan is secured, by granting them the exclusive right as insurance agents to write, or have written, all the fire insurance carried on the buildings," etc. This, respondent contends, constitutes direct inducement and consideration from the appellant as an insurance agent to such borrowers, for the writing of fire insurance.

With the issue involved in this case, we find no authorities exactly pertinent or analogous. Respondent relies largely upon the holdings in the cases of *Way v. Pacific Lumber & Timber Co.*, 74 Wash. 332, 133 Pac. 595, 49 L. R. A. (N. S.) 147, and *Ferguson-Hendrix Co. v. Fidelity & Dep. Co.*, 79 Wash. 528, 140 Pac. 700. But in those cases we merely held, in accordance with fundamental principles of law, that one cannot avoid his contractual obligations because of his own violation of statutes regulating the conduct of the business under which the contract was made. To the same effect are the decisions in *Key v. National Life Ins. Co.*, 107 Iowa 446, 78 N. W. 68, and *Interstate Life Assurance Co. v. Dalton*, 165 Fed. 176, 23 L. R. A. (N. S.) 722.

With respect to the vigorous attack of appellant upon the policy of the law, we have only to say that the legislature deemed it advisable to enact this law regulating insurance and insurance companies and agents, and establishing a department of government for the supervision thereof. We will not speculate as to the policy thereof, or attempt to dictate or outline the general policy or course of conduct of said department. *People v. Formosa*, 131 N. Y. 478, 30 N. E. 492, 27 Am. St. 612. In this instance, however, we are of the opinion that private rights are threatened with undue invasion by the insurance commissioner, in excess of his authority, and that the appellant has no adequate remedy other than that invoked herein.

With respondent's contention we cannot agree. If the inducement and consideration flowing from the appellant in

such transactions constitutes any inducement or favor for anything, it is for the granting of a loan or loans. As between the agent and the insured, it is rather a detriment than a rebate, benefit, favor, or inducement to the insured. There is no pretense that any premium other than the established or "board rates" of insurance is ever charged by appellant in its transactions.

The evident intent of the statute in question is to establish uniform rates of insurance throughout the state, and to maintain an absolute standard of insurance rates. The language of the statute is broad and the penalty for violation thereof is severe, viz., the cancellation of the license of the insurance agent who violates it. We shall not extend its provisions by judicial construction beyond its very evident scope and purpose. Forfeitures are not favored by the law, and, so far as we can see, there is no violation of the provisions of said statute by such transactions as those now under consideration.

The judgment of the lower court is reversed, and the cause remanded with instructions to grant the permanent injunction prayed for against respondent.

MORRIS, C. J., CHADWICK, and PARKER, JJ., concur.

MOUNT, J. (dissenting)—It is conceded in this case that the appellant is a licensed insurance agent, and also engaged in negotiating loans of money in this state. It is also conceded that, when an application is made for a loan of money, the applicant is required to sign the agreement set out in the majority opinion to the effect that, in consideration of services to be rendered by the appellant, if the loan is made, the applicant will compensate them by granting the exclusive right to write all fire insurance carried on the building covered by the security, and in addition pay a cash commission.

The statute provides:

"No licensed insurance agent . . . shall offer . . . any rebate of . . . the premium payable . . . or any

other valuable consideration or inducement to or for insurance . . . or other thing of value whatsoever as inducement to insurance or in connection therewith which is not specified in the policy." 3 Rem. & Bal. Code, § 6059-33.

The statute is broad in its terms and was intended to prevent rebating in any form of the premiums upon insurance policies; so that insurance policies should be independent of all other considerations than those expressed upon the face of the policy. When an insurance agent exacts a promise of insurance as a consideration for a loan of money, he is certainly offering a valuable consideration and an inducement for the insurance. This seems to me to be too plain to admit of serious discussion. If insurance agents may, under the statute quoted in the majority opinion, offer loans, or services in procuring loans, or an advantageous sale of real estate, as an inducement for insurance contracts, then they may offer articles of merchandise, or any other thing of value. If an insurance agent should say to a client desiring insurance:

"I can give you no rebate upon the insurance premium which must be paid in full in cash, but if you will grant me the exclusive right to insure your buildings I can procure for you a loan of money which you may need,"

could it be reasonably said that this transaction would not be an inducement for the insurance? Plainly not. And yet it seems to me this is exactly what the majority say is legal under the statute. If so, the statute is of no force.

I am satisfied that the trial court properly construed the statute, and that the judgment should be affirmed. I therefore dissent.

### On Rehearing.

[Decided March 26, 1915.]

Per Curiam.—Subsequent to the filing of the opinion in this case, a petition for rehearing was filed by respondent in which it was suggested that, inasmuch as the license of the appellant would expire April 1, 1915, and under the

law, unless the case was reversed, a license would not be reissued for the ensuing year, the cause, should the petition be granted, instead of being heard upon oral argument, be submitted to the entire court upon the petition for rehearing and briefs in order that a decision might be reached prior to April 1st. This has been done, and upon such rehearing a majority of the court adhere to the views as expressed in the former opinion. For the reasons therein stated, the judgment is reversed.