## STATE EX REL. vs. LOUCKS

(No. 1211, September 9th, 1924; 228 Pac. 632.)

INSURANCE—POWERS OF COMMISSIONER OF INSURANCE—CANCELLA-
TION OF AGENT'S LICENSE—"REBATE" DEFINED—WORDS AND
PHRASES—STATUTORY CONSTRUCTION.

1.   Comp. Stats. 1920, Sec. 5237, does not confer authority upon
the Commissioner of Insurance, to revoke an agent's
license for violating Comp. Stats. 1920, Sec. 5235 forbid-
ding the giving, selling or purchasing of stocks, bonds
or other securities as an inducement to insurance.

2.   The word "rebate" as used in Comp. Stats. 1920, Sec.
5235, prohibiting rebates of premiums payable on insur-
ance policies, means any deduction, discount or draw-
back from the gross amount of the premium payable on
a policy.

3.   The rule of strict construction is applicable to Comp. Stats.
1920, Sec. 5237, providing a penalty for violation of an
insurance statute.

4.   Though an insurance agent's license, wrongfully revoked,
would since have expired, if not revoked, mandamus to
vacate revocation should not be denied on the ground that
it would be altogether ineffectual, where the revocation,
if allowed to stand, would continue the disability of the
agent for the period which might not have expired.

NOTE—See Headnotes (1) 32 C. J. p. 1000; (2) 33 Cyc. p. 1570;
(3) 32 C. J. p. 1000; (4) 26 Cyc. p. 149.

Original proceedings in mandamus by the State on rela-
tion of Horace R. Coddington against H. A. Loucks, as In-
surance Commissioner of the State of Wyoming to compel
respondent to vacate his order cancelling relator's license
as a life insurance agent. Heard on demurrer to respond-
ent's answer. At a former hearing defendant's demurrer
to the petition was overruled; see 30 Wyo. 485, 222 Pac. 37.
The case was submitted on the briefs filed in the former
hearing.

*Charles L. Rigdon,* for plaintiff.

*David J. Howell,* Attorney General, for defendant.

Potter, Chief Justice.

This action, brought in this court for a writ of mandamus to compel the respondent, as insurance commissioner of the state, to vacate his order cancelling relator's license as a local life insurance agent, has been now submitted upon a demurrer to defendant's answer. At a former hearing a general demurrer of the defendant to the petition was overruled. See 30 Wyoming 485, 222 Pac. 37.

The respective contentions were stated in the opinion disposing of that demurrer substantially as follows: For relator, that the statutes do not authorize a revocation for the reason assigned for revoking relator's license, and that, if they do, they are to that extent void because failing to provide for a notice and hearing. And for the defendant, that sections 5235 and 5237, Comp. Stat. 1920, legally confer upon the commissioner ample power for said revocation. But, as then also stated, we deemed it unnecessary to decide the questions raised by those contentions, and the demurer was overruled upon the grounds that the petition sufficiently alleges that the reason given for revoking the license did not in fact exist, and, taking that as admitted by the demurrer, it would follow that the commissioner's action was based upon false information or was unreasonable and arbitrary; the court having held that though the relator's right under his license was not property, it could not be arbitrarily taken from him, and that mandamus was an appropriate remedy for the review of the commissioner's action upon the facts alleged in the petition.

The questions aforesaid not disposed of by that opinion are again presented, and upon the briefs submitted at the former hearing. The answer admits the following allegations of the petition: That the Insurance Company is a corporation organized and existing under the laws of the State of Colorado; that it has complied with the insurance laws of this state, and is duly authorized to transact the business of life insurance in this state. That on January

30, 1923, the insurance commissioner duly granted the relator authority as local agent of said company; said authority being evidenced by an instrument called a license, and in words and figures as set out in the petition; that the defendant, as insurance commissioner, cancelled the said license for the violation of Section 5235, Comp. Stat. 1920. The answer then alleges, as and for a second defense, certain facts which, so far as material to the present issue, may be summarized as follows: That during the month of March, 1923, numerous complaints were made to defendant to the effect that certain agents of said insurance company, and the relator in particular, were violating section 5235, Comp. Stat. 1920, in that he and they were offering stock in the said company as an inducement to purchase life insurance policies in said company. That on April 4 the defendant sent a notice to relator, which is set out in full in said answer, informing him of said complaints, and calling his attention to the statute forbidding such conduct and the penalty for the violation thereof. That the relator replied thereto by a letter dated April 7, wherein the truth of said complaints were denied. That complaints continued to be made to defendant that relator was offering and selling stock of said company as an inducement to purchase life insurance. And that upon then investigating the matter the defendant found that stock in the company had been sold by relator to certain named purchasers of policies in said company; and attached to the answer are affidavits from said alleged purchasers, stating the fact that stock in the company had been offered them as an inducement to the purchase of life insurance in the company. It is then finally alleged that as a result of his said investigations defendant became satisfied and convinced that relator had violated the statute, in the manner stated, both before and after the notice to him of April 4, 1923, and thereupon, on September 25, 1923, the defendant cancelled the license and authority issued for the benefit of the relator "to act as local life insurance agent for said company." The answer

is demurred to upon the single and general ground that it is ''insufficient in law on its face.''

Section 5235, Comp. Stat. 1920, alleged to have been violated and for which the relator's license was cancelled, reads as follows:

''No life insurance company doing business in this state, shall make or permit any distinction or discrimination in favor of individuals between insurants (the insured) of the same class and equal expectation of life in the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes; nor shall any such company or agent thereof make any contract of insurance or agreement as to such contract other than as plainly expressed in the policy issued thereon; nor shall any such company or any officer, agent, solicitor or representative thereof pay, allow or give, or offer to pay, allow or give, directly or indirectly, as inducement to insurance, any rebate of premium payable on the policy, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any paid employment or contract for services of any kind or any valuable consideration or inducement whatever not specified in the policy contract of insurance; or give, sell or purchase, or offer to give, sell or purchase as inducement to insurance or in connection therewith any stocks, bonds or other securities of any insurance company or other corporation, association or partnership, or any dividends or profits to accrue thereon or anything of value whatsoever not specified in the policy.''

As will be noticed from the above statement of facts, the only provision of said section 5235 alleged or claimed to have been violated is found in the last clause, prohibiting the giving, selling or purchasing of stocks, bonds or other securities, dividends or profits to accrue thereon, or any-

thing of value not specified in the policy, or offering to do so, as inducement to insurance; and a violation of that provision is specifically alleged in the answer as the sole ground for cancelling the license. On behalf of defendant it is contended that the authority for such cancellation is to be found in section 5237, and no provision found elsewhere in the statutes seems to be relied upon as conferring such authority, nor are we referred to any other provision as having that effect. And counsel for relator refers to said section as containing the only provision to be considered, other than the provisions found in section 5235, in determining the validity of the commissioner's act here complained of. We here quote that section, but in connection with and following the intervening section, 5236, which, enacted at the same time as the other two sections aforesaid in their original form and as a part of the same act, may be considered with them, though bearing but slightly, perhaps, upon the disputed question of the commissioner's authority:

"§ 5236. It shall not be lawful for any life insurance company doing business in this state, or its representatives, to procure for any person seeking life insurance, a state auditor's certificate for the purpose of allowing to such person a rebate."

"§ 5237. Any life insurance company, its agent or agents, violating the provisions of the two preceding sections, shall be guilty of a misdemeanor, and upon conviction thereof, the offender or offenders shall be sentenced to pay a fine of five hundred dollars on each and every violation, when the amount of the insurance is twenty-five thousand dollars, or less, and for every additional twenty-five thousand dollars or less there shall be an additional penalty of five hundred dollars to be recovered by action in the name of the state, and on collection it shall be paid into the county treasury for the benefit of the common school fund in the county in which the offense was committed, and said agent or agents shall be prohibited from doing business in this

state for the period of one year after the offense was committed. In cases where no suit is brought, but where proper and convincing evidence is brought to the attention of the state auditor, or insurance commissioner, of such rebate having been allowed or offered, he shall impose the penalty mentioned above of a cancellation of the license of such agent or agents for the period of one year after the offense was committed.''

The particular provision relied on as granting authority for the commissioner's act is found in the concluding part of section 5237 declaring that where no suit is brought, ''but where proper and convincing evidence'' of the fact ''of such rebate'' having been allowed or offered is brought to the commissioner's attention, he shall impose the penalty ''mentioned above,'' of a cancellation of the license ''of such agent or agents for the period of one year after the offense was committed.'' The question, therefore, is does that confer authority for the commissioner to revoke for a violation of the provision of section 5235 forbidding the giving, selling or purchasing stocks, bonds or other securities, or offering to do so, as an inducement to insurance. Relator's counsel contends that it does not, but that the authority is limited to cases of ''rebate'' which does not include the offense of selling or offering for sale stocks or other property as an inducement to insurance. And we think the contention in that respect must be sustained. The use of the words ''such rebate'' in the provision aforesaid of section 5237 indicates a reference to something preceding; and we find the word ''rebate'' used once only in each of the two preceding sections, first, in section 5235, forbidding any ''rebate of premium,'' and next, in section 5236 forbidding the procuring of a state auditor's certificate for the purpose of allowing ''a rebate'' to any person seeking life insurance. And these three sections in their original form were enacted at the same time, in the same order, and as the only sections of the act, aside from the

final section declaring when the act shall take effect. L.
1890-91, Ch. 101.

The relator's alleged offense of selling or offering to sell
stock as an inducement to the purchase of insurance is cer-
tainly not a "rebate of premium payable on the policy,"
as that phrase or the word "rebate" is usually understood;
nor is it technically a rebate of anything. The word "re-
bate" is defined as follows: By the Century Dictionary,
as meaning, "an allowance by way of discount or draw-
back; a deduction from a gross amount." In Webster's
New International Dictionary,—"Deduction; abatement;
remission or payment back, as, a rebate of interest for im-
mediate payment; a rebate of freight charges." In Bou-
vier's Law Dictionary (Rawle's 3rd Rev.): "Discount;
the abatement of interest in consequence of prompt pay-
ment. An allowance by way of discount or draw-back." In
7 Words & Phrases, citing State v. Ins. Co., 38 La. Ann.
465, 467, it is said that rebates, in insurance, are deductions
from stipulated premiums allowed in pursuance of ante-
cedent contract. And that definition is accepted in the
case of Commissioner v. Life Ins. Co., 159 Ala. 533, 49 So.
234, where, after referring to it the court said, concerning
the phrase "rebate of premium payable on the policy"
used in a statute similar in that respect to our section 5235:

"It is also elsewhere defined as a 'draw-back' and
'abatement.' Waiving other considerations possible, and
leading to the same result, it is too apparent for doubt that
.the share system created bears no relation to a rebate, for
the obvious reason that the policy holder must afford, and
does, if he secures the share—provided, the consideration
for it be particular services to be performed,—services of
evident value and utility to the safe conduct and business
of the company."

That was said in a case wherein it was attempted to revoke
a license on the ground that a clause in the policy contract
violated the law in providing for a special income, of shares

of $1.00 for each $1000 of the face value of each policy
bearing the clause, to be ascertained annually, and payable
to the policy holder, subject to the payment of the pre-
mium; and providing also, as a consideration for such spe-
cial income, that the insured shall render services upon re-
quest, such as furnishing information to the company about
the fitness and desirability of agents or applicants therefor,
and concerning applicants for insurance, or those applying
for reinstatement or lapsed policies, or respecting claims
against the company that might aid in protecting it from
unjust claims.    And that was held not to constitute a re-
bate.   In a Mississippi case involving a policy containing
apparently the same special income provision, it was held
that said feature of the policy violated the provisions of the
insurance statute, not, however, on the ground that it was
a rebate, but that it amounted to ''an illegal discrimina-
tion.''   Cole v. State, 91 Miss. 628, 45 So. 11.  In Hamor v.
Eastern R. R., 133 Mass. 315, the court said:  ''A rebate
of interest is a discount or abatement of interest on sums of
money not yet due and payable, not a payment back of in-
terest due and paid.''   For a collection of cases illustrating
the general understanding of the meaning of rebates in con-
nection with contracts of insurance under anti-rebate stat-
utes, see Cooley's Briefs on Ins., Vol. VI, Suppl. 1009-1013.

The general subject of section 5235 seems to be discrim-
ination, not rebate; a rebate of premium being therein for-
bidden, apparently, as one method only of discrimination.
The title of the original act, above referred to, which
brought these three sections into our statutes, was:  ''An
act to prevent discrimination in life insurance.''  It would
be a forced construction, and we think unjustified, to give
to the word ''rebate'' in the penal clause aforesaid the
comprehensive meaning of ''discrimination;'' but that
would be necessary to a conclusion sustaining the commis-
sioner's authority for the revocation in question.   This is
a penal statute, and, as such, under the usual rule applic-
able to penal statutes, it must be strictly construed.   It pro-

vides for penalizing the offender not only by revoking his existing license, but by prohibiting his doing business in the state for a period of one year after the offense was committed. Considering a similar prohibition in the case of an inn-keeper's license, it was said by the court in Balling v. Elizabeth, 79 N. J. L. 197; 74 Atl. 277:

"And while it has been determined by this court that a license to keep an inn or tavern is not a contract but a mere privilege to do business   *   *   *   still, as a mere privilege to do business the license must be assumed to have had some value at the time of its revocation. But yet more important to this prosecutor, and more significant from a legal point of view, is the fact that the prosecutor by this action (revocation of license) was in effect penalized and required to suffer an enforced ostracism from his chosen licensed occupation for one year."

By mentioning and specifically forbidding several different methods of possible discrimination, the statute, in section 5235, in effect, we think, distinguishes a rebate of premium from the other specified acts. Thus, immediately following the clause forbidding any such rebate the section forbids also any special favor or advantage in dividends or other benefits to accrue upon the policy, or any valuable consideration or inducement not specified in the policy contract; and then comes the clause containing the provision alleged in this case to have been violated. That seems to indicate a legislative intent, at least, that the other specified acts would not be covered by the provision forbidding a rebate of premium; and this becomes quite clear, so far as the provision relating to the sale of or offering to sell stock is concerned, when we review, as we shall presently, the history of the legislation.

In the case of People v. Life Ins. Co., 247 Ill. 92, 93 N. E. 90 it was held that a provision in the statute that no life insurance company shall promise to give any advantage or

valuable consideration whatever, not expressed or specified in the policy, as an inducement to take out insurance, is violated where the insured is given an option, not mentioned in the policy, to purchase shares of the company's stock at a specified price within a fixed period. But it was not held, nor does it seem to have been contended in that case, that such option or the purchase, if made, would violate a provision against rebates, though the statute there in question prohibited, as one of the specified methods of discrimination, the return of premiums, dividends, or other benefits.

We think it significant also that the section containing the penal provisions aforesaid (5237) should, after declaring generally that a violation of the provisions of the two preceding sections shall constitute a misdemeanor, and subject the offender, upon conviction, to a fine and to be prohibited from doing business in the state for the stated period aforesaid, specify a particular transaction when granting authority to the commissioner. That would seem to justify the inference, at least, that the naming of one only of the prohibited transactions was intended as a limitation upon the commissioner's authority. But a reference to the history of the legislation shows clearly, we think, that it was not intended by said clause to include the act of selling and offering to sell stock, bonds or other securities as inducement to insurance. These three sections, in their original form, came into the statutes by an act entitled as above stated, approved January 22, 1891. That act contained three sections only of substantive matter, which have become respectively Sections 5235, 5236 and 5237, Comp. Stat. 1920. Section 3 of the act was amended in 1897 and Section 1 in 1907. The clause of section 3, now 5237, permitting revocation of the license by the commissioner, was not originally in that section or in the act at all. That clause or provision was added to section 3 by the amendment of 1897. L. 1897, Ch. 33. The provision forbidding the selling or offering to sell stock, etc., as inducement to insur-

ance was not then a part of Section 1, which had then become section 3274, R. S. 1899, nor, so far as we have noticed, was a prohibitory provision to that effect then to be found elsewhere in our statutes. That provision was added in 1907, when the section, then known as Section 3274, R. S. 1899, was amended. L. 1907, Ch. 38. It appears, therefore, that when the penal clause aforesaid, containing the disputed provision, became a part of the statutes, the act of selling or offering to sell stock as an inducement to the taking of insurance had not been specifically declared unlawful, and, unless clearly covered by other language of the statute, was not a ground for conviction as a misdemeanor under the provisions now found in section 5237. It cannot well be said, therefore, that the legislature might have intended to cover or include such an act by the words ''such rebate'' found in the provision granting power of revocation to the commissioner.

As we must hold, for the reasons above explained, that the commissioner was without authority under the terms of the statute to revoke the relator's license, either with or without a hearing, upon the ground assigned by him, it will be unnecessary to consider the question whether, for conduct covered by the provision aforesaid, the commissioner's authority might be exercised without notice or hearing.

The demurrer to the answer will be sustained, and, unless application to amend or further plead be made by defendant, a reasonable time for which, if desired, may be granted, an order will be entered for the issuance of the writ prayed for to the extent at least of relieving the relator from the penalty of one year's prohibition from engaging in the business of life insurance agent in this state. A writ might not be effectual to reinstate the license, which would have expired December 31, 1923, if not revoked, but we think the writ should not be denied on the ground that it would be altogether ineffectual, since the effect of the revocation, if allowed to stand, would be to continue the dis-

ability of the relator for a period which may not yet have expired.

*Demurrer Sustained.*

BLUME and KIMBALL, JJ., concur.