## WILLIAMS v. DICKEY et al.

No. 34548.    May 29, 1951.

Rehearing Denied June 19, 1951.

*232 P. 2d 637.*

Little & Hoyt and Wayne W. Bayless, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., and John C. Andrews, Counsel for State Insurance Board, Oklahoma City, for defendants in error.

HALLEY, J. Parties will be referred to in the positions they occupied in the court below.

The Pioneer Reverse Life Insurance Company of Oklahoma City, which is duly licensed to conduct a life insurance business in this state, gave written notice under section 140, Title 36, O.S. 1941, to the State Insurance Board, the defendant, of the appointment of the plaintiff to act as its agent, and the notice was accompanied by the written application of the plaintiff for a license to sell insurance on a form prescribed by the defendant. The defendant issued the license to plaintiff on May 1, 1949. On November 10, 1949, the defendants issued an order on the plaintiff to show cause why his agent's license should not be revoked because of false answers made in his application for the license. A hearing was had before the defendants on the 23rd of December, 1949, and on the 29th of December, 1949, defendants made an order revoking the license of the plaintiff. This action was brought to restrain the defendants from canceling and revoking the license.

The record shows that the plaintiff made false answers to at least four questions in the application he made to the defendants. Question 14 of the application reads as follows: "State fully and in detail all the practical experience you have had as a life, health and accident agent. If none, write 'none' in table below," and his answer was "None," when in fact he had practical experience as an agent. Question 16 reads: "Have authorities of any state ever refused you a license?" His answer was "No," when in fact he was denied a renewal of his license to sell in the State of Idaho on June 28, 1948, and he was refused a license by the State of Nebraska. To Question 17 which is as follows: "Has your license ever been suspended or revoked by any state?" his answer was "No," in spite of the fact that the State of Idaho had refused to renew his license. To Question 19, which is as follows: "Have you ever been convicted of a felony? If so, give details," he answered, "No." Yet the record showed his conviction in four separate felony cases in the State of Texas, two of which were for forgery and one for conspiracy. It was further shown that he was convicted of the crime of Cheats and False Rep-

resentation in the State of New Mexico and sentenced to serve not less than four years nor more than five years in the State Penitentiary there. This sentence was suspended on condition he leave the state.

It is to be remembered that the act creating the Insurance Board and setting out the duties and authority of the Board was passed by the 1915 Legislature as House Bill No. 70, chapter 174, page 280 of the 1915 Session Laws, and is Title 36, §§131 to 151, O.S. 1941. It is a carefully drawn act and was made necessary by the fact that the former act controlling the licensing of insurance agents had been held unconstitutional by this court in the case of Welch, Insurance Com'r, v. Maryland Casualty Co., 47 Okla. 293, 147 P. 1046. No contention is made that the plaintiff was not given a hearing as required by section 140.

The plaintiff raises the following propositions:

"(1) The right to sell life insurance is a valuable right, and as such, is entitled to be treated as analogous to property rights.

"(2) The Insurance Board has no inherent power to revoke plaintiff's license, but must find such authority to revoke in the statutes delegating the power of the Board to act.

"(3) The court will refuse to extend statutes relating to revocation by judicial construction.

"(4) In the absence of statutory authority the Insurance Board was not entitled to revoke plaintiff's license, even though said Board may have had the power to refuse to grant plaintiff a license in the first instance.

"(5) The Legislature did not intend to, nor was it authorized to require a character qualification in order to secure a license to sell life insurance."

In our opinion, it is unnecessary to answer all of these propositions, in light of the statutory provision covering this matter, which is sec. 140, 36 O.S. 1941. The first sentence of subd. (b) in that section is as follows:

"The State Insurance Board, in determining if the agent is entitled to a license, shall take into consideration his experience in the insurance business, ability to be a competent agent, and the general reputation and character . . . as to honesty, integrity and responsibility."

Clearly, in this case, the Insurance Board would have had the right to refuse the plaintiff a license to sell insurance at the time his application was submitted, if it had been given the true facts. Under subd. (c) of the same section, the right to revoke a license is given the Insurance Board. Certain grounds for revocation are set up. Fraud in procurement of the license is not one of them, but we believe that the right to revoke on that ground is implied in the act. We quote from 53 C.J.S., Licenses, §44, subd. (b):

"A license may be revoked for any reason that would have justified a refusal to issue it in the first instance, and it may be revoked for various acts of misconduct occurring after the license has been issued."

This statement is sustained by Butcher v. Maybury, 8 F. 2d 155; Mahaney v. Cisco (Tex. Civ. App.) 248 S. W. 420; Commonwealth v. Briggs, 34 Pa. Dist. & Co. 97; In re Oleomargarine Licenses, 19 Pa. Dist. 927, 37 Pa. Co. 350; In re Revocation of Certificate of Registration of Scutt, 46 Dauph. Co. (Pa.) 196; and Arroyo v. Moss, 56 N.Y.S. 2d 29, aff. 56 N.Y.S. 2d 17, 269 App. Div. 824, aff. 295 N.Y. 754, 65 N.E. 2d 570. In Butcher v. Maybury, supra, the court made this statement:

"The power of the state to require a license implies the power to revoke a license which has been improperly issued."

In Schireson v. Schaefer, 354 Pa. 458, 47 A. 2d 665, 165 A.L.R. 1133, the rule is laid down that the power of the state to require a license implies the power to revoke a license which, by reason of fraud in its procurement, was improperly issued; and there is an extensive note found at 165 A.L.R. 1138,

. which deals with this question and cites cases from 21 states which follow the rule that the licensing authority has inherent power to revoke a license obtained by fraud and misrepresentation. Three Oklahoma cases are cited in that note: Dean v. Stone, 2 Okla. 13, 35 P. 578; Gulley v. Territory, 19 Okla. 187, 91 P. 1037; and In re Mosher, 24 Okla. 61, 102 P. 705, 24 L.R.A. (N.S.) 530, and all sustain this power in the licensing authority.

The judgment is affirmed.

CORN, GIBSON, DAVISON, and JOHNSON, JJ., concur. ARNOLD, C.J., and WELCH and O'NEAL, JJ., dissent.

WELCH, J. (dissenting). I have no concern with the question whether plaintiff should have been granted a license or whether he should now retain his license. I am concerned, however, with the rule of law announced in the syllabus, and the rule announced in the body of the opinion.

Assuming, for the sake of argument, that such a Board would have inherent authority, or implied authority, to revoke a license for fraud in its procurement, still, I think it beyond question that the Legislature would have the authority, in creating such a Board, to deprive it of any such implied power. This, our Legislature has done by our statute. Title 36 O. S. 1941 §140 provides for the granting of licenses to insurance agents, but by subd. (c) of said section it is provided in material part as follows:

"It is provided further that the State Insurance Board shall *only* cancel any license issued by it after a hearing before the said State Insurance Board, on charges made in writing and after a copy of said charges have been mailed to the said agent at his last known address and giving him ten days' notice for appearance. Charges as filed *must* set forth *some violation* of the Insurance laws of this state, or that the agent has through his said agency *defrauded some policy holder* or that he *lacks sufficient ability* to

properly conduct the business of insurance or that he is *incompetent* or has made use of *misrepresentations,* twisting *or other bad practices in the conduct of his insurance business,* after such hearing of the charges made, the State Insurance Board shall render its opinion in writing and if it deems *the charges* sufficiently proven to be true, shall forthwith cancel the said license and shall notify the said agent and the said company of its findings, . . ." (Emphasis ours)

Since the statute makes such specific provision that "the State Insurance Board shall *only* cancel any license issued by it . . ." upon some one of *the charges* set out in the statute, the statutory Board can have no other or further implied power.

I regard it as an important rule that fraud, or fraudulent actions, may only be adjudicated and determined by a court of competent jurisdiction, or by some board or commission that is expressly given authority to so act and adjudicate and to furnish relief from fraud. In my view such an adjudication may not be made by a board, where the power of the board is expressly restricted as in the above-quoted portion of the statute.

In Fisher v. State Insurance Board, 139 Okla. 92, 281 P. 300, this court considered this same statute to reverse or vacate an order canceling such a license. In that case this court emphasized the fact that the power of the Insurance Board to revoke a license is entirely separate from the authority to issue the license in the first place. In that decision this court not only held the Board to its statutory authority as to revocation of license, but it was there held that part of the authority attempted to be conferred on the Board was invalid.

My view is sustained by the decision in State v. Loucks, 32 Wyo. 26, 228 P. 632. There the Supreme Court of Wyoming in mandamus required reinstatement of such a license for lack of valid express authority for the revocation.

The same principle was applied in Calvin Phillips & Co. v. Fishback, 84 Wash. 124, 146 P. 181.

In Johnson v. Betts, 21 Ariz. 365, 188 P. 271, it was held as follows:

"While the Corporation Commission is a creature of the Constitution and by it vested with certain named powers over public service corporations, its supervisorial powers over insurance companies are statutory. It is well recognized that special tribunals exercising special summary powers must find their authority within the statute. They have no common-law powers nor implied powers, except such as are absolutely necessary to carry out those powers expressly granted them. In accordance with this principle, in State v. Board of Supervisors, 14 Ariz. 222, 127 P. 727, it was said, quoting from a Nevada case (State v. Central Pac. R. Co., 21 Nev. 172, 26 P. 225, 1109):

"'A board of equalization is of special and limited jurisdiction, and, like all inferior tribunals, has only such powers as are specially conferred upon it. It is essential to the validity of its action that they should be authorized by some provision of the statute; otherwise, they are null and void.'

"We held in that case that the board of equalization of Yavapai county could not grant a rehearing to a taxpayer because the power to do so had not been conferred upon the board by the statute. The position there taken is well sustained by the cases cited, and we are satisfied that the rule announced is sound and determinative of the point here made."

For these reasons, I respectfully dissent, and I am authorized to say that ARNOLD, C.J., and O'NEAL, J., join in this dissent.