State ex rel. Russell, Inc. v. Fire & Police Comm'rs, 182 Wis. 249.

STATE EX REL. HOWARD W. RUSSELL, INC., Appellant, vs.
BOARD OF FIRE AND POLICE COMMISSIONERS OF THE
CITY OF MILWAUKEE and others, Respondents.

*November 16—December 11, 1923.*

*Detectives: Licenses: Application: Investigation by police officials:
Matters considered.*

The fire and police commission of the city of Milwaukee may
make an investigation of its own as to the good character,
competency, and integrity of an applicant for a license to
open an office in the city and to engage in the business of a
private detective, and consider matter not contained in the
application, under sub. (1) to (3), sec. 175.07, Stats. 1923.
p. 253. ESCHWEILER, J., dissents.

APPEAL from an order of the circuit court for Milwau-
kee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

*Mandamus* to compel the fire and police commission of
Milwaukee to approve relator's application for a license to
open an office in the city of Milwaukee and to engage in
the business of a private detective. The commission held
public hearings upon the application and upon consideration
of the whole matter refused to approve the application.
Upon the application as filed the relator was *prima facie*
entitled to the approval of the commission, but it alleges that
as the result of the hearings it was not satisfied of the good
character, competency, and integrity of the applicant and
for that reason refused to approve of the application. The
relator demurred to the return, and from an order overrul-
ing the demurrer it appealed.

For the appellant there was a brief by *Lamfrom & Tighe,*
attorneys, and *Leon B. Lamfrom,* of counsel, all of Mil-
waukee, and oral argument by *Alvin H. Tighe.*

*John M. Niven,* city attorney, for the respondents.

VINJE, C. J. The question raised by the demurrer is,
Can the fire and police commission make an investigation

250    SUPREME COURT OF WISCONSIN.    [DEC.

State ex rel. Russell, Inc. v. Fire & Police Comm'rs, 182 Wis. 249.

of its own as to the good character, competency, and integrity of the applicant and consider matter not contained in the application, or is it limited in its inquiry as to such qualifications to the matters relative thereto set out in the application itself?

The statute we are called upon to construe is now found in sub. (1), (2), and (3) of sec. 175.07, Stats. 1923, and reads:

"(1) No person, copartnership, or corporation shall act as a private detective for hire or reward or engage in the business of private detective for hire or reward, or advertise such business to be that of private detective or that of conducting a detective agency, without having first obtained a license so to do, as hereinafter provided, from the secretary of state of the state of Wisconsin.

"(2) Any person, copartnership or corporation intending to act as a private detective for hire or reward or to conduct the business of private detective or detective agency or advertise said business shall present to the secretary of state and file in his office a written application duly signed and verified by such person in case of an individual for such license; and in case of a copartnership such application must be signed and verified by all of the individuals composing such copartnership; and in case of a corporation such application shall be signed and verified by the president or secretary and manager of such corporation; and if such person, copartnership or corporation intends to establish an office in any city in this state such application must be approved in each instance by the fire and police commission of those cities having a fire and police commission, but in those cities where there is no fire and police commission by the chief of police of said city and, in addition thereto, by not less than five reputable citizens, freeholders of the county where the applicant or applicants propose to establish such office, all of which approvals shall be signed by the fire and police commission of those cities having a fire and police commission, and by the chiefs of police and freeholders in such cities where there is no fire and police commission and acknowledged before an officer authorized by law to take acknowledgments. Such application shall state the age, residence,

State ex rel: Russell, Inc. v. Fire & Police Comm'rs, 182 Wis. 249.

present and previous occupation of such applicant or applicants and the name of the city where the principal place of business is, or is to be located, and such further facts as will show the good character, competency and integrity of such applicant or applicants.

"(3) The secretary of state, when satisfied from an examination of such applications and such further inquiry and investigation as he shall deem proper, of the good character, competency and integrity of such applicant or applicants, shall issue and deliver to such person, copartnership or corporation, a license, upon the applicant paying to the secretary of state, for the use of the state, a license fee of two hundred dollars. Such license shall not be issued by the secretary of state, unless there is executed, delivered and filed in his office a bond by such applicant or applicants, with two sureties, freeholders of the state, in the sum of two thousand dollars, conditioned that such applicant or applicants will faithfully and honestly act as private detective or detectives or faithfully and honestly conduct the business of private detectives and the business of detective agency, which bond, as to its form, manner of execution and sufficiency of the sureties must be approved by said secretary of state. Such bond shall be taken in the name of the state of Wisconsin, and any person injured by the wilful, malicious or wrongful act of the licensee may bring an action on said bond in his own name to recover damages suffered by reason of such wilful, malicious or wrongful act."

This statute was before this court in *Pinkerton v. Buech,* 173 Wis. 433, 181 N. W. 125, where its constitutionality was upheld. The invalidity there claimed was that the law did not provide for a standard test by which applicants were to be judged; but it was held that "the test and standard of qualifications prescribed by the statute for obtaining the license is that the applicant shall be a person of good character, competency, and integrity," and that such standard is an ascertainable and known one. In speaking of that part of the law providing that "Such application shall state the age, residence, present and previous occupation of such applicant or applicants and the name of the city where the prin-

cipal place of business is, or is to be located, and such further facts as will show the good character, competency, and integrity of such applicant or applicants," the court said:

"Manifestly the facts thus required to be shown by the written application are declared by legislative action as the standard of qualifications which entitles the applicant to have his application approved. It naturally follows from this that approval or disapproval of the application is to be based on such standard of qualifications and that the facts shown by the written application are to be acted on by the persons designated in the statute to perform this duty."

From this language it is argued by the relator that the statute contemplates action by the fire and police commission upon the contents of the application alone, especially in view of the fact that specific provision was made for "such further inquiry and investigation" by the secretary of state as he shall deem proper, while no such provision for an examination or investigation *dehors* the application is in terms made as to the fire and police commission. That there is some basis for this claim is apparent. But an analysis of the statute and the language of the court quoted will satisfy one that the language used is not strictly accurate as applied to all the provisions of the law, for the statute provides for an investigation by the secretary of state and does not limit his action to the contents of the application. In the *Pinkerton Case* the court's attention was directed chiefly to the question of a standard of qualification and that was the specific matter for adjudication. It was not then sought to settle questions of procedure under the statute. All that was adjudicated was that there was a proper standard fixed and proper persons designated to determine whether the applicant came up to the required standard.

To hold that the fire and police commission must act upon the contents of the application alone would be to limit it to pass only upon the sufficiency of the contents of the application as a matter of law. We think the legislative intent

was otherwise. The powers exercised by a private detective are important and often delicate, and in their use require exceptional tact, honesty, and good judgment. They are in the nature of police powers, and it was the legislative thought that no one should be allowed to maintain an office in any city of this state for the purpose of exercising such powers without possessing the required qualifications to be ascertained by the fire and police commission of each city. If such qualifications are to be determined only by an examination of an application made out by the applicant, the matter reduces itself to one of ability on the part of the applicant, or of his attorney, to put in the application what the law requires. If that is done the commission must, under relator's construction of the statute, approve the application. It is the existence of the facts showing the qualifications required by the statute rather than those shown by the written application, as stated in the *Pinkerton Case,* that the commission is to act upon. And in order to act intelligently and satisfy itself that the applicant does really possess the requisite qualifications, information *dehors* the application must usually be resorted to or else the effect is to make the applicant a judge of his own qualifications. All he has to do is to state what the statute requires, and that can be done without perjury in the case of the most unfit. The law intended to protect cities against the establishment of private detective offices therein by persons not possessing the statutory qualifications, and it reposed in the fire and police commission the duty to approve or disapprove of the issuing of the license because of the existence or non-existence of the requisite qualifications. This means more than merely assuring the secretary of state that the application as to contents complies with the law. It means that the commission is satisfied that the applicant possesses the requisite qualifications. And it is evident that often, especially in the case of an outsider or stranger applying for a license, the commission cannot be satisfied without an

State ex rel. Pinkerton v. Fire & Police Comm'rs, 182 Wis. 254.

investigation from sources outside the application. The power to make such investigation is necessarily implied in the statute in order to carry out its evident purpose.

*By the Court.*—Order affirmed.

ESCHWEILER, J. (*dissenting*). I think under the statute in question a power being expressly given to the secretary of state to make inquiry and investigation as to the good character, competency, and integrity of an applicant and there being no such power or authority given in the same statute to the local police authorities, that the inclusion of the one is necessarily the exclusion of the other, and that two such examinations and investigations are not within the meaning of the statute.