THE PEOPLE OF THE STATE OF NEW YORK ex rel. WALTER J. MARKS, Appellant, against JOSEPH H. BROPHY, as Warden of Auburn Prison, Respondent.

Submitted October 13, 1944; decided November 30, 1944.

*Walter J. Marks,* appellant in person. I. Appellant is entitled to all the time served on parole from October 26, 1935, to March 8, 1939. (*United States ex rel. Moore et al.* v. *Traeger,* 44 F. 2d 312; *In re Johnson, Petitioner,* 167 U. S. 120; *Covell* v. *Heyman,* 111 U. S. 176; *Taylor* v. *Taintor,* 83 U. S. 366; *Abelman* v. *Booth,* 21 How. 506; *Grant et al.* v. *Guernsey,* 63 F. 2d 163; *Adamy* v. *Parkhurst,* 61 F. 2d 517; *Mackenzie* v. *Barrett,* 141 F. 964; *Cozart* v. *Wolf,* 185 Ind. 505; *State* v. *Freauff,* 177 Ore. 214; Correction Law, §§ 213, 241.) II. The crime of using the mails to defraud in violation of section 338 of title 18 of the United States Code (Code Crim. Pro., § 215), and the crime of conspiracy in violation of section 88, title 18 of the United States Code (Code Crim. Pro., § 37), do not constitute a conviction of a felony within the purview of the laws of the State of New York and sections 219 and 242 of the Correction Law are not applicable in such a case as there was no conviction of a felony. (*United States* v. *Zeuli,* 137 F. 2d 845; *People* v. *Collins,* 234 N. Y. 355; *People* v. *Gutterson,* 244 N. Y. 243.)

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Patrick H. Clune, John W. Barnell* and *George A. Radz* of counsel), for respondent. I. Appellant was convicted of a crime which, if committed within the State of New York, would be a

felony. The basic element or ingredient of the scheme concocted by appellant and his associates was the forging of checks and sending them by mail to Tennessee for payment. These acts, namely, the uttering of a forged instrument and the making of a written instrument purporting same to be the act of another which creates a pecuniary demand or obligation, are forgeries and felonies within our penal statutes. (Penal Law, §§ 881, 887; *People* v. *Stovali,* 172 Misc. 469; *People* v. *Fury,* 279 N. Y. 433.) II. Appellant forfeited the time spent on parole by his conviction for a crime which would be a felony if committed in New York State. (*People ex rel. Cecere* v. *Jennings,* 250 N. Y. 239; *People ex rel. Kleinger* v. *Wilson,* 254 App. Div. 406; *People ex rel. Gariti* v. *Brophy,* 255 App. Div. 823.)

DESMOND, J. In 1930 relator was sentenced by the County Court of Erie County to serve a definite ten-year sentence in Auburn State Prison. In 1935, after he had been in confinement under that sentence for exactly five years, he was released therefrom and came under the supervision of the State Board of Parole. At the time of that release and before leaving prison he signed a " parole agreement ", one of the provisions of which we shall discuss hereafter. In April, 1939, relator was " declared delinquent " as of March 8, 1939, by the Board of Parole, because of his arrest on the latter date, by United States authorities. That arrest was pursuant to an indictment, found against him by a Grand Jury in a Federal District Court in Tennessee charging crimes committed during the period while he was on parole. The Federal indictment charged relator, and others, with the crime of using the United States mails to defraud, and, in another count, with the crime of conspiring so to use the mails. Both those crimes are felonies under the laws of the United States. (U. S. Code, tit. 18, §§ 88, 338 and 541.) Relator pleaded guilty to both counts of the indictment, was sentenced to a term of imprisonment and a fine, and was thereupon confined in a Federal penitentiary under that sentence until December 20, 1941. On that date he was released from the Federal penitentiary and returned to one of our State prisons to serve whatever part remained unexecuted of the sentence imposed on him by the County Court in 1930. Relator claims, as against that ten-year sentence, credit not only for the five years served by him in State prison before 1935, but also for the period of

three years, four months and eighteen days which elapsed while he was under supervision of the Parole Board before his delinquency. On that basis he computes that when he was returned to State prison in 1941, he had only one year, seven months and thirteen days left to serve and so should have been released in August, 1943. Refused such release, he brought this proceeding. He was defeated in both courts below, and we granted him leave to appeal to this court.

The State has, so far successfully, urged that relator, by his 1939 delinquency which consisted of his Federal conviction, forfeited, and lost all credit for, the time during which he was under parole supervision. As justifying such a forfeiture, the State points to the agreement signed by relator at the time of his release in 1935. In that agreement it is, among other things, stipulated that if relator should, while on parole, commit and be convicted of " a felony, either in New York State or any other state," he would be compelled to serve in a State prison, " the portion remaining " of his original ten-year sentence " from the time of such release on parole to the expiration " of that ten-year sentence. The question to be decided, the parties here agree, is as to the meaning and application to these facts, and effect, of the language of that agreement: " a felony, either in New York State or any other state ".

The record does not show clearly by whose authority, under what particular law or for what reason relator was released in 1935, nor by whose authority or under what law there was presented to him the " parole agreement " above quoted from. Both the petition and answer in this proceeding assert that he was " released on parole by the State Parole Board ". The State's brief on this appeal tells us that relator was " released on parole following a reduction in his sentence by the Governor pursuant to Section 242 of the Correction Law." That section directs the Governor, when reducing a sentence, to annex certain conditions. One of these mandated conditions under that statute is that if the released prisoner, during the remainder of the term for which he was sentenced, shall be convicted of a felony within this State or of a " crime under the laws of any other state, government, or country, which if committed within this state would be a felony " he shall forfeit all credit for the time during which he is under parole supervision. That section

242 was in effect when relator was released in 1935, but it does not necessarily follow that it was, or could be, authority for the imposition of the condition found in relator's " parole agreement " (see *People ex rel. Ingenito* v. *Warden, etc., Auburn Prison,* 267 App. Div. 295, affd. 293 N. Y. 803). We note that the statute in effect in 1930, when relator was first sentenced, former section 243 of the Correction Law, contained different language. That statute provided for a forfeiture of time on parole in the event of a conviction of " any felony," without any specific reference to a situation where a released prisoner might be adjudged guilty of a felony *under the laws of another State or country.* However, it is probably not important to choose between the two statutes. The words " any felony," used in the older section (243) were construed by this Court in 1928 in *People ex rel. Atkins* v. *Jennings* (248 N. Y. 46) to mean the same thing as the language now found in section 242. Atkins had been released by the Governor upon the express condition that he should be returned to prison and should serve out the whole remainder of his sentence without reduction if he should, while on parole, be convicted of " any felony ". Atkins was convicted of a larceny in Michigan, served a term in a Michigan prison, and was then brought back to New York. It did not appear whether or not the Michigan larceny had been a felony under Michigan laws. This court, construing " any felony " said (248 N. Y. at page 52) : " if the offense for which relator was convicted [in Michigan] would be cognizable by our laws as a misdemeanor or not at all, it cannot be included in the standard of crime that the Governor had in mind when the sentence was commuted." Thus it is that " any crime " as used in the old section, 243 of the Correction Law, meant no more or less than did the new statute (present section 242 of that Law) when the latter provided for a forfeiture for a felony conviction in this State or for a conviction elsewhere of a crime which would be a felony under our laws if committed in this State.

We are not holding, however, that either old section 243 of the Correction Law, in effect in 1930, or new section 242, in effect in 1935, applies to the situation shown in this record. Both those sections describe the conditions to be imposed by the *Governor* who alone has the power to reduce definite or " straight " sen-

tences. The Parole Board's powers as to ordering reductions and releases have to do only with indeterminate sentences. (See Correction Law, §§ 223, 241.) Prisoners released by the Governor are, upon such release, turned over to the Parole Board for supervision (Correction Law, §§ 241 and 242), but the Parole Board does not control such releases or the conditions thereof. Applying the presumption of regularity, however, we think it a fair solution of this difficulty, or seeming difficulty, to assume that the condition imposed on relator in the 1935 agreement, was so imposed by act or authorization of the Governor.

A commutation by the Governor may be on a condition that the commutation granted by the Governor will be forfeited for misbehavior. (See *People* v. *Burns*, 77 Hun 92, 95, affd. on opinion below 143 N. Y. 665; *Ex Parte: William Wells*, 59 U. S. 307, State Const. art. IV, § 4.) It is, therefore, no argument against the validity of the condition agreed to by this relator in 1935 — that he should forfeit his time on parole if he should commit and be convicted of a felony " either in New York State or any other state " — that there was no precise statutory authority for just that form of condition. It was a valid condition, nonetheless, under the Governor's constitutional powers. We must therefore examine into its meaning as applied to the facts of this case.

The *Atkins* case (248 N. Y. 46, *supra*), held that when the Governor of this State in 1914 decreed that a released prisoner should forfeit his commutation if convicted of " any felony," the Governor referred only to a conviction of a crime described in our laws as a felony. We think the Governor who in 1935 ordered that this relator should suffer a similar forfeiture if convicted of " a felony, either in New York State or any other state " meant the same thing. It is fundamental in the public policy of this State that we do not, if we can avoid it, decree forfeitures in our courts because of violations of the criminal laws of another jurisdiction. (See *Sims* v. *Sims*, 75 N. Y. 466; *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 102; *People* v. *Gutterson*, 244 N. Y. 243; *Matter of Cohen*, 278 N. Y. 584; *Matter of Donegan*, 282 N. Y. 285, cf. *People* v. *Gennaro*, 287 N. Y. 657.) That policy, given effect by this court as to released prisoners in the *Atkins* case (*supra*), has since been specifically made a matter of legislation, as to such parolees, in sections 219 and 243 of the present

Correction Law. We think consistency requires that the parole agreement signed by this relator in 1935 should be construed so as to require a forfeiture only in the event of relator's conviction of a crime known to our laws as a felony. The crimes adjudged by the Federal courts against this relator (using the mails to defraud and conspiring so to do) are crimes unknown to our State Penal Law and not cognizable at all in our State courts. (*People* v. *Gutterson, supra; Matter of Donegan, supra.*) They are crimes " cognizable only by the laws of the United States " (*Gutterson* opinion, p. 250).

The State says, however, and the lower courts have held in this case, that *People* v. *Fury* (279 N. Y. 433), is, somehow, authority to the contrary. We do not agree. *People* v. *Fury,* unlike *People* v. *Gutterson* (*supra*), involved a prior conviction where the same offense (uttering a counterfeit Federal Reserve bank note) was a felony both under the Federal Criminal Code and under our Penal Law. Fury was held to be a second offender not on the basis of a previous conviction of a crime described only in the laws of another jurisdiction but because he had been previously convicted in another jurisdiction of a crime declared to be a felony in our own statutes.

This relator did, of course, violate other terms of his 1935 agreement when he fell afoul of the Federal criminal laws and so was properly returned to State prison to serve the remainder of his sentence. But he did not violate the only provision of that agreement which called for a forfeiture of time on parole, for its violation. Thus he did not forfeit that parole time and should have been given credit for it when he was returned to prison in this State. With such a credit, his ten-year sentence was fully served in August, 1943. He should have been released then, and must be released now.

The orders should be reversed, the writ sustained, and the Warden ordered to release relator from custody.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and THACHER, JJ., concur.

Orders reversed, etc.