THE PEOPLE OF THE STATE OF NEW YORK ex rel. ALPHONSE DOTE, Respondent, against WALTER B. MARTIN, as Warden of Attica State Prison, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

Fourth Department, March 14, 1945.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, First Assistant Attorney-General, Patrick H. Clune, Wortley B. Paul* and *Herman N. Harcourt, Assistant Attorneys-General* of counsel), for appellant.

*Alphonse Dote,* relator in person.

Dowling, J.   On April 24, 1922, the relator, Alphonse Dote, was convicted by the verdict of a jury in Oneida County Court of the crime of burglary, first degree.   On April 28, 1922, the relator was sentenced by Hon. Frederick H. Hazard, Oneida County Judge, who presided at relator's trial, to New York State Prison at Auburn for a term of "not less than 13 years nor more than 20 years."   On this sentence the relator was credited with two months and twenty-six days jail time. The relator was received at Auburn State Prison on April 29, 1922.   The relator was paroled from prison on November 21, 1931.   The relator was declared delinquent as of February 14, 1934, and was returned to prison on March 2, 1934, with a credit of twenty days parole jail time.   The relator was reparoled from prison on March 2, 1936.   At a meeting of the Board of Parole held at Great Meadow Prison on February 17, 1938, the relator was declared delinquent as of November 9, 1937, on the ground that he had "absconded from supervision" on November 9, 1937. The relator was apprehended in the State of New Jersey and was returned to prison on April 23, 1940.   The relator was credited with all time spent on parole prior to November 9, 1937.   The Board of Parole directed that the relator should serve the remainder of his maximum sentence.

Before the relator was reparoled on March 2, 1936, he signed an agreement, in accepting parole, which provided, in part, as follows: " I will not leave the State of New York or the community to which I have been paroled without the written permission of my parole officer.   *   *   *   During the period which

I am on parole, should I commit a felony, either in New York State or any other State, I understand that in addition to serving the sentence pronounced upon me for this offense, I shall be compelled to serve in a State penal institution, the portion remaining of the maximum term of the sentence on which I was released on parole, from the time of such release on parole to the expiration of such maximum.''

On November 14, 1937, the relator was arrested at Remsen, Oneida County, N. Y., by the State Police on a charge of violating section 1201 of the Penal Law which makes it a felony to destroy insured property under circumstances not amounting to arson. While in the lawful custody of the State Police at Remsen on the aforesaid charge, the relator unlawfully escaped from their custody. On January 14, 1938, the relator was indicted by the Grand Jury of Oneida County for the crime of arson, second degree, charged and committed as a second offense. The Grand Jury also indicted the relator for the crime of escape, a felony, contrary to the provisions of section 1694 of the Penal Law. On April 6, 1940, the relator was arraigned on both indictments in Oneida County Court to which indictments the relator entered a plea of not guilty. On April 22, 1940, the relator, on advice of counsel, withdrew his plea of not guilty and entered a plea of guilty to both indictments. On April 22, 1940, the court sentenced the relator to Attica State Prison for a term of seven years for the crime of violation of section 1694 of the Penal Law. On the same day the court sentenced the relator to Attica State Prison for a term of not less than five years and not more than ten years for the crime of violation of section 1201 of the Penal Law. The court ordered that the sentences, so imposed, be served concurrently with each other, and that both sentences run concurrently with such portion of the sentence imposed on the relator on April 28, 1922, as remained unserved. The relator was allowed nineteen days jail time.

On June 12, 1941, the relator was returned to the Oneida County Court for correction of the sentences imposed on relator on April 22, 1940. The court vacated the sentences imposed on the relator on April 22, 1940, and on June 16, 1941, upon relator's plea of guilty entered April 22, 1940, sentenced the relator, who was represented by counsel, for the crime of violation of section 1694 of the Penal Law, to Attica State Prison for a term of not less than one year and not more than two years, and for the crime of violation of section 1201 of the Penal Law, the Court suspended the passing of sentence. The relator was returned to the custody of the Warden of Attica State Prison. On May

**12, 1944,** the Board of Parole allowed the relator to begin the service of his one to two years sentence.

In July, 1944, the relator procured a writ of habeas corpus directing the Warden of Attica State Prison to produce the relator before a Special Term of the Supreme Court, Wyoming County, to be held at Attica State Prison on August 22, 1944. In his petition for the writ, the relator claimed that his sentence of thirteen to twenty years had expired and that his sentence of one to two years had expired on February 2, 1944. The Warden of Attica produced the relator as directed and made return to the writ. The return was not traversed by the relator. In his return the Warden certified that the relator was in his custody and was being detained by him " by virtue of the final judgment of a court of competent criminal jurisdiction, and said judgment and sentence are still in full force and effect and the sentence of said relator has not expired ". The Warden attached to and made a part of his return the judgments of conviction of April 28, 1922, and of June 16, 1941. The Warden claimed the right to detain the relator by virtue of both of said judgments which he maintained were in full force and effect.

The matter came to a hearing before Mr. Justice Alonzo G. Hinkley on the petition and the return. So far as appears in the record, no testimony was taken and no documentary proof was offered. Justice Hinkley took the matter under advisement and on September 25, 1944, rendered a decision sustaining the writ and ordering the release of the relator. On October 17, 1944, an order sustaining the writ and directing the discharge from imprisonment of the relator was entered in Wyoming County clerk's office. From that order the People of the State of New York, on October 18, 1944, have appealed.

Justice Hinkley reached the conclusion that the maximum sentences of the relator had expired and that any condition attached to the relator's parole which extended the relator's imprisonment beyond the date of the expiration of relator's maximum sentences " was illegal, unconstitutional and unauthorized " citing *People ex rel. Ingenito* v. *Warden, etc., Auburn Prison* (267 App. Div. 295, affd. 293 N. Y. 803). With Justice Hinkley's conclusion we are unable to agree.

The law governing the relator's release on parole is to be found in the Prison Law as it existed at the time of his sentence on April 28, 1922. (*People ex rel. Ingenito* v. *Warden, etc., Auburn Prison, supra.*) Section 214 of the Prison Law, as amended by Laws of 1922, chapter 297, effective March 27, 1922, authorized the Board of Parole to release a convict, upon his applica-

tion, on parole outside of prison walls upon such terms and conditions as such Board shall prescribe. A convict, so released on parole, was to remain " in the legal custody and under the control of the agent and warden of the state prison from which he is so paroled, until the expiration of the maximum term specified in his sentence * * * ". Section 214 further provides in part, that " The board of parole shall, in granting such parole, annex a condition to the effect that if any such convict shall, during the period between the date of his release by reason thereof and the date of the expiration of the maximum term for which he was sentenced, be convicted of any felony, committed in the interval as aforesaid, he shall, in addition to the sentence which may be imposed for such felony and before beginning the service of such sentence, be compelled to serve in the prison or penitentiary in which he may be confined for the felony for which he is so convicted, the remainder of the maximum term of his sentence, without commutation, unless sooner released on parole or absolutely discharged by the board of parole of state prisons, but he may, however, earn compensation in reduction of the remainder of such term ". Section 214 makes a distinction in the treatment of delinquent parolees who have committed no felonies while on parole and parolees who have committed felonies while on parole.

The sentence imposed on the relator, being an indeterminate sentence, the Board of Parole had power to impose reasonable conditions when it released relator on parole. (*People ex rel. Marks* v. *Brophy,* 293 N. Y. 469, 474.) On October 19, 1931, Governor Franklin D. Roosevelt reduced the relator's minimum sentence " as compensation for good conduct and willing and efficient performance of duties assigned to him " so that it would expire on November 21, 1931, " in order that he may apply to the Board of Parole for State prisons for parole in accordance with the provisions of law and the rules and regulations governing parole * * * ". The Board of Parole imposed the conditions above set forth when it ordered the release of the relator on parole on January 30, 1936, effective March 2, 1936, and the relator accepted the conditions so imposed and agreed to abide by them while out on parole. The conditions so imposed were those imposed by the Board of Parole in such cases and they were not unreasonable conditions as applied to this case. The reduction of the minimum sentence granted by the Governor was such that the relator's release on parole would depend upon his application to the Board of Parole and acceptance of such conditions as the Board

of Parole might impose in accordance with its rules and regulations governing parole.

When relator was declared delinquent on November 9, 1937, he had served approximately fifteen years, nine months and seven days. This would leave four years, two months, twenty-three days of his maximum sentence yet unserved. The relator was returned to prison on April 23, 1940. Adding the four years, two months and twenty-three days as of April 23, 1940, the relator's maximum sentence of twenty years expired about July 16, 1944. But the relator must still serve the one- to two-year sentence imposed upon him on June 16, 1941. That sentence was not made to run concurrently with his thirteen- to twenty-year sentence. On May 12, 1944, the Board of Parole allowed the relator to begin the service of his one- to two-year sentence. Hence his maximum two-year sentence will expire on May 12, 1946.

The relator contends that he should be allowed for the time he was, in effect, a fugitive from justice, a period of two years, five months and fourteen days. If this were so he should have been released on February 2, 1944. Under the conditions of his parole and as a matter of law he was not entitled to be credited with any time after he was declared delinquent and while he was a fugitive from justice. If this were so " any prisoner whose parole had been revoked could nullify the parole law by staying in hiding until after the maximum time of service of his sentence had expired. It is for this reason that the authorities have said that when a prisoner violated his parole, and his parole was revoked, he thereafter became the same as an escaped prisoner — one who had escaped from prison at the time of revocation. This merely means that a prisoner who so conducts himself that the authorities charged with enforcing the parole system find it necessary to revoke his parole must come back and serve the remainder of his sentence. He cannot escape this penalty or this punishment by hiding away from the authorities so that they cannot find him to bring him back." (*People ex rel. Patterson* v. *Bockel*, 270 N. Y. 76, 78–79, and authorities cited.) " Escape interrupts service, and the time elapsing between escape and retaking will not be taken into account or allowed as a part of the term. (*Anderson* v. *Corall*, 263 U. S. 193.)" (*People ex rel. Atkins* v. *Jennings*, 248 N. Y. 46, 53.) The relator admits his delinquency by not traversing the return. (*People ex rel. Ross* v. *Lawes*, 227 App. Div. 464, 467.) *People ex rel. Ingenito* v. *Warden, etc., Auburn Prison* (267 App. Div. 295, *supra*)

is not authority for the decision at Special Term. In that case the court held that the Board of Parole had no power to declare the forfeiture of parole time from the date of Ingenito's release to the date he was convicted of a felony and that the Board of Parole had no authority to include such a condition in Ingenito's parole.

No question has been raised as to the regularity of the proceedings employed in the retaking of the relator on April 23, 1940. It was stated on the argument, without contradiction, that the relator had been extradited from New Jersey on an extradition warrant signed by the Governor of New York. We have reached the conclusion that the relator was being lawfully detained by the Warden of Attica State Prison when he instituted these proceedings and that the term of relator's maximum sentence, on the one- to two-year sentence, will not expire until about May 12, 1946, if we correctly interpret the facts appearing in the record.

The order appealed from should be reversed on the law, the writ dismissed, and the relator remanded to the custody of the Warden of Attica State Prison at Attica, N. Y.

All concur, HARRIS, J., in result only. Present — TAYLOR, P. J., DOWLING, HARRIS, LARKIN and LOVE, JJ.

Order reversed on the law, without costs of this appeal to any party, writ dismissed, and the relator remanded to the custody of the Warden of Attica State Prison at Attica, N. Y.