## NICHOLAS P. BERARDI, APPELLANT, v. JOSEPH D. RUTTER, RESPONDENT.

IN THE MATTER OF THE HEARING ON AN ORDER TO SHOW CAUSE WHY THE PRIVATE DETECTIVE LICENSE, No. 671, ISSUED TO NICHOLAS P. BERARDI SHOULD NOT BE REVOKED FOR CAUSE.

Superior Court of New Jersey
Appellate Division

Argued September 17, 1956—Decided October 8, 1956.

42

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. George Pellettieri* argued the cause for Nicholas P. Berardi, appellant (*Messrs. Pellettieri & Rabstein,* attorneys and of counsel).

*Mr. Christian Bollermann* argued the cause for respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General).

The opinion of the court was delivered by

CLAPP, S. J. A. D. This is an appeal by Nicholas P. Berardi from an order of the Superintendent of State Police revoking his license as a private detective. *N. J. S. A.* 45:19–12.

Three years after receiving his license, Berardi entered a plea of *nolo contendere* to an information returned in the United States District Court for the District of New Jersey, charging him with a violation of 26 *U. S. C. A.* 3616(*a*). The statute makes it a misdemeanor to deliver

"* * * to the collector * * * any false or fraudulent * * * return * * * with intent to * * * evade the * * * assessment intended to be made * * *."

Berardi was accused of having falsely claimed exemptions in 1951 for his mother and son on the ground that they were dependent upon him. A judgment of conviction was entered on the plea, and though sentence was suspended, Berardi was fined $500 and placed on probation for five years.

On the hearing below, it was stipulated that the sole question before the Superintendent was whether under *N. J. S. A.* 45:19–12 the plea of *nolo contendere* and the conviction and sentence, in themselves, constitute sufficient cause warranting disciplinary action by the Superintendent; and that for that reason it would not be necessary to produce any witnesses other than Berardi. *N. J. S. A.* 45:19–12 provides that the license

"shall be revocable by the superintendent after hearing for *cause.*" (Italics added)

The Superintendent in his findings concluded that a person convicted of a misdemeanor in the federal court, fined and placed on probation, as stated, was not fit to hold a private detective's license and that this conviction and sentence constituted cause for revoking his license.

■ Appellant's first point before us constitutes an attack upon the constitutionality of the above quoted provision of *N. J. S. A.* 45:19–12, on the ground that the term "cause" is so indefinite as to contravene the due process clauses in the State and Federal Constitutions and render the statute void for vagueness and so inadequate as a standard as to constitute an improper grant of power to the executive department. That a standard is necessary when the Legislature confers upon an administrative officer or agency a *quasi-judicial* function, such as an authority to grant or revoke licenses, see *State v. Wheeler Auto Driving School, Inc.*, 17 *N. J. Super.* 488, 495 (*App. Div.* 1952); 6 *Rutgers L. Rev.* 43, 47 (1951); cf. *Abelson's, Inc. v. N. J. State Board of Optometrists*, 5 *N. J.* 412, 424 (1950). An adequate basic standard would, however, satisfy not only the rule as to standards but also the rule arising under the due process clause, which renders a penal statute void for vagueness. See *Abelson's, Inc., supra;* 6 *Rutgers L. Rev.* 43, 48, 49 (1951); cf. *Jordan v. De George*, 341 *U. S.* 223, 230, 231, 71 *S. Ct.* 703, 95 *L. Ed.* 886, 892 (1950).

■■ It is elementary that a court will, if reasonably possible, put a construction upon a statute which will render it constitutional; and that only where it clearly violates the constitution, will it be struck down. It is elementary also that in deciding whether a term, such as "cause," provides an adequate standard, the court will not confine its attention to the term itself, but must examine the entire statute in the light of its surroundings and objectives. *Ward v. Scott*, 11 *N. J.* 117, 123 (1952).

■ An examination of the entire statute here discloses, among other things, that the Superintendent of State Police may refuse to issue a private detective's license if he is not "satisfied" as to the applicant's "good character, competency

and integrity." *N. J. S. A.* 45:19–12. In the absence of any indication to the contrary, we will presume that the Legislature did not intend to establish one standard for the issuance of the license and another standard for its revocation. *Division of N. J. Real Estate Comm. v. Ponsi,* 39 *N. J. Super.* 526, 531 (*App. Div.* 1956), an opinion written for this court by Judge Jayne. *Cf. Williams v. Dickey,* 204 *Okl.* 629, 232 *P. 2d* 637 (*Sup. Ct.* 1951); *Mahaney v. City of Cisco,* 248 *S. W.* 420, 423 (*Tex. Civ. App.* 1923). For example, one would hardly suppose that the Legislature intended to authorize the Superintendent to issue a license today to a person convicted on a plea of *nolo contendere* and at the same time intended to authorize the Superintendent to revoke the license on the morrow because of that conviction.

■ The standard expressed by the term "cause" is therefore in the present context to be equated to the standard fixed for the issuance of the license; it covers the factors covered by the latter standard, and only those factors. We accordingly take it that *cause* signifies just this: a substantial (*cf. Finnegan v. Miller,* 132 *N. J. L.* 192, 194 (*Sup. Ct.* 1944)) deficiency with respect to "good character, competency and integrity."

■ Such a standard is surely free from any constitutional infirmity arising because of vagueness or inadequacy. For the standard does not admit of arbitrary action on the part of the Superintendent; nor does it enable him to accomplish some personal or other purpose wholly out of keeping with the apparent legislative design. Moreover, it is explicit enough to advise licensees adequately of the conditions which will render their licenses revocable. *Cf. Abelson's, Inc., supra,* 5 *N. J.,* at *page* 424.

■■ Standards are sustained today, notwithstanding their generality. *State v. Hotel Bar Foods,* 18 *N. J.* 115, 124 (1955); *In re Greenville Bus Co.,* 17 *N. J.* 131, 135 (1954); *Ward v. Scott,* 11 *N. J.* 117, 123–125 (1952); *N. J. Bell Tel. Co. v. Communication Workers,* 5 *N. J.* 354, 371 (1950). And of course there is nothing objectionable in investing an administrative officer with a discretion (see *City of Newark*

*v. N. J. Turnpike Authority,* 7 *N. J.* 377, 385 (1951); *Nagy v. Ford Motor Co.,* 6 *N. J.* 341, 349 (1951)), if the discretion is bridled and held in check by a statutory standard. *State v. Wheeler Auto Driving School, Inc.,* 17 *N. J. Super.* 488, 495 (*App. Div.* 1952).

■ The point with respect to constitutionality must therefore be rejected. It might be as well to add that in putting the above construction upon the term "cause," we are not suggesting that a statute which authorizes an administrative officer to revoke a license for "cause," may violate the Constitution because it is silent as to what constitutes cause. We do not decide that point, though it may be noted, in passing, that there are a considerable number of statutes throughout the country authorizing the removal of an officer or employee for "cause," and that under them "cause" is generally held to mean "just cause" or such cause as is "plainly sufficient under the law and sound public policy" (*Haight v. Love,* 39 *N. J. L.* 14, 22 (*Sup. Ct.* 1876), affirmed at 39 *N. J. L.* 476 (*E. & A.* 1877); *Ayers v. Newark,* 49 *N. J. L.* 170, 171, 172 (*Sup. Ct.* 1886); *Brokaw v. Burk,* 89 *N. J. L.* 132, 135 (*Sup. Ct.* 1916); *Russo v. Meyner,* 22 *N. J.* 156, 179, 181 (1956) (Heher, J. in a dissenting opinion)), excluding therefore arbitrary or capricious action. Moreover, the term there is generally held to have reference to a substantial cause touching qualifications appropriate to the office or employment or to its administration. *Russo v. Meyner, supra,* 22 *N. J.,* at *page* 179; and many other cases in accord, some of which are cited in 43 *Am. Jur.* 47; 67 *C. J. S.* 248, *Officers,* § 60, *p.* 248; 46 *C. J.* 986; 4 *McQuillin, Municipal Corporations* (*3rd ed.*), 256, 257. But see *Lipkin v. Duffy,* 119 *N. J. L.* 366, 368 (*E. & A.* 1938); *Mayor etc. of City of Hoboken v. Gear,* 27 *N. J. L.* 265, 287, 288 (*Sup. Ct.* 1859, opinion of Vredenburgh, J. only). As thus defined, the term "cause" resembles in some respects the standard of "good character, competency and integrity" now under consideration.

■ Leaving the point with respect to constitutionality, we turn next to the question what constitutes "good character,

competency and integrity" within the· intendment of this statute. Do these words have reference to a conviction for an offense involving falsification of a federal tax return with an intent to evade the tax? In considering this question, we run into the provisions of this statute, setting up the qualification of employees of private detectives (*N. J. S. A.* 45:19–16), which are quite illuminating:

> "No person shall be employed by any holder of a license until he shall have executed and furnished to such license holder a verified statement, to be known as 'employee's statement,' setting forth:
>
> \* \* \* \* ·\* \* \* \*
>
> (d) That he has not been *convicted* of a high misdemeanor or *of any offense involving moral turpitude* or of any of the misdemeanors or offenses described in this section.
>
> (e) Such *further* information as the superintendent may by rule require *to show* the *good character, competency, and integrity* of the person executing the statement." (Italics added)

We might observe at this juncture in the discussion that where an intent to defraud constitutes an essential element of an offense, the offense surely involves moral turpitude. *Jordan v. De George,* 341 *U. S.* 223, 232, 71 *S. Ct.* 703, 95 *L. Ed.* 886, 893 (1950), *Annotation,* 95 *L. Ed.* 899, 907; *Louisiana State Bar Assn. v. Steiner,* 204 *La.* 1073, 16 *So. 2d* 843 (*Sup. Ct.* 1944); *cf. In re Hallinan,* 43 *Cal. 2d* 243, 272 *P. 2d* 768 (*Sup. Ct.* 1954). Here the offense involves moral turpitude since an intent to evade an assessment— that is, to defraud the government—constitutes an essential element. 26 *U. S. C. A.* 3616(*a*).

 We cannot conceive that the Legislature intended that a person convicted of an offense involving moral turpitude was to be permitted to qualify as a detective, but not as a detective's employee.. The Legislature may, of course, fix one standard for the licensee and another for his employee, depending on the circumstances, including the type of license involved. *State v. Wheeler Auto Driving School, Inc.,* 17 *N. J. Super.* 488, 494 (*App. Div.* 1952). But with respect to an offense of the sort above stated and in connection with a detective's license, one surely may presume that the Legis-

lature did not intend to differentiate between the licensee and his employee.

■ It is also to be observed that under the rule laid down in *Kravis v. Hock,* 136 *N. J. L.* 161, 165 (*E. & A.* 1947), if a detective's employee is convicted of an offense involving moral turpitude, he is disqualified under *N. J. S. A.* 45:19–16, even though the conviction is based on a plea of *nolo contendere.* For while under that rule the conviction entered on such a plea does not estop the employee from denying his guilt in the revocation proceedings, nevertheless by force of the statutory provisions (*viz., N. J. S. A.* 45:19–16(*d*), *supra*), proof of the *conviction* disqualifies him quite apart from his innocence. *Lenvin and Meyers,* "*Nolo Contendere: Its Nature and Implications,*" 51 *Yale L. J.* 1255, 1267 (1942). Since, as above pointed out, the Legislature presumably prescribed the same standard in this regard, both for the detective and for his employee, it presumably contemplated that a conviction (even though based on a plea of *nolo contendere*) would also suffice as a disqualification of the licensee himself.

Attention is next directed to the word "further," italicized in the portion of *N. J. S. A.* 45:19–16 above quoted. Though at first it might seem to be a rather slight word on which to attach any real significance, yet it will appear, on reflection, that it serves to expose an intention undoubtedly entertained by the Legislature. As we have said above, the Legislature could hardly have supposed that a person with a criminal record revealing a conviction of the sort specified in *N. J. S. A.* 45:19–16(*d*) (whether or not the conviction was based on a plea of *nolo contendere*) should be disqualified as a detective's employee and yet be permitted to serve as a detective. On the contrary, it must undoubtedly have been supposed that an applicant for a detective's license who had such a criminal record would be barred under the standard "good character, competency, and integrity."

■ The word "further" (appearing in *N. J. S. A.* 45:19–16(*e*)), when read with *N. J. S. A.* 45:19–16(*d*), indicates that the Legislature apparently supposed that a

*conviction* of one of the crimes specified in that paragraph
(*d*) would, of itself, demonstrate a failure to meet the
standard of "good character, competency, and integrity"
governing a detective's employee as stated in paragraph (*e*).
In other words, this standard is there conceived of as a
general one comprising various qualifications, including the
particular qualifications with respect to convictions, stated
in paragraph (*d*). The interpretation thus given to the
term "good character, competency, and integrity" (appearing
in *N. J. S. A.* 45:19–16(*e*)) in connection with the detec-
tive's employee, is persuasive when we apply that same term
(as used in *N. J. S. A.* 45:19–12) to the detective himself.

 Upon these premises, we are brought to the view
that Berardi's conviction disqualifies him, even as it would
disqualify his employee; and that hence, without further
proof, his license is revocable in a proceeding before the
Superintendent. We have not overlooked the possibility that
under this statute the terms "good character * * * and
integrity" may not be synonymous and that in the context
"character" may therefore signify reputation or credit, as
at times it does. But, even if that is the import of the word
here (we do not pass upon the point), we do not see how
this can affect the present case. For the stipulation below,
reducing the case to the single question aforementioned,
indicated that it would be unnecessary to bring in witnesses
on any other matter—including therefore Berardi's repu-
tation.

 The conclusions we have reached above not only on
the question whether the standard here should be "good
character, competency, and integrity," but also with respect
to the proper construction to be put upon that standard,
comport with the obvious objectives of the entire statute.
That statute and others somewhat like it which will be
found in a considerable number of jurisdictions, were enacted
because of the abuses that may attend the operation of the
business of a detective agency. As has been said, these
statutes, in the interests of the public, sought "to prevent
from engaging in that business disreputable, incompetent

persons who would prey upon the public." *Shorten v. Milbank,* 170 *Misc.* 905, 11 *N. Y. S. 2d* 387, 389 (1939), affirmed 256 *App. Div.* 1069, 12 *N. Y. S. 2d* 583 (*App. Div.* 1939). See also *Fox v. Smith,* 123 *App. Div.* 369, 108 *N. Y. S.* 181, 182, 185 (*App. Div.* 1908), containing language to somewhat similar effect in both the majority and the dissenting opinions, affirmed on the basis of dissenting opinion, 197 *N. Y.* 527, 90 *N. E.* 1158 (*Ct. App.* 1909). Further, see *Taylor v. Bureau of Private Investigators,* 128 *Cal. App. 2d* 219, 275 *P. 2d* 579, 583 (*D. Ct. App.* 1954); *State ex rel. Howard Russell, Inc., v. Fire & Police Com'rs.,* 182 *Wis.* 249, 196 *N. W.* 242, 243 (*Sup. Ct.* 1923); *Norwood v. Ward,* 46 *F. 2d* 312 (*D. C. S. D. N. Y.* 1930) (before three judges); *Lehon v. Atlanta,* 242 *U. S.* 53, 37 *S. Ct.* 70, 61 *L. Ed.* 145 (1916); *cf. Rupp v. Rupp,* 97 *N. J. Eq.* 201, 202 (*Ch.* 1924).

██ Two arguments of Berardi may be briefly disposed of at this point, even though they involve some of the questions adverted to earlier. First, he maintains that if the statute be constitutional, nevertheless the term cause should be limited to certain acts which are referred to at various places in the law as specific grounds for the revocation of a detective's license, namely: *N. J. S. A.* 45:19–12 (failure to give Superintendent notice "of any change in the membership of the firm," etc., or "change in the address"); 45:19–15 and 45:19–16 (false statement by licensee as to person in his employ); 45:19–20 (with respect to misleading advertising). This argument does not warrant discussion. We see no basis for supposing that the Legislature intended to narrow the broad standard expressed by the term cause so as to confine it to the acts enumerated.

Finally it is said that conviction of a *federal* crime does not furnish the Superintendent with any basis for revocation of a license. There is no merit to this argument either. The New York cases cited, *In re Donegan,* 282 *N. Y.* 285, 26 *N. E. 2d* 260 (*Ct. App.* 1940); *Tonis v. Board of Regents,* 295 *N. Y.* 286, 67 *N. E. 2d* 245 (*Ct. App.* 1946), and *Garsson v. Wallin,* 304 *N. Y.* 702, 107 *N. E. 2d* 604 (*Ct.*

*App.* 1952), merely decide what constitutes a felony under New York law; and *People ex rel. Marks v. Brophy,* 293 *N. Y.* 469, 58 *N. E.* 2d 497 (*Ct. App.* 1944), is not persuasive here.

The Superintendent's order, revoking Berardi's license upon the basis of the conviction above mentioned, is affirmed.